60226. INTERNATIONAL BUSINESS MACHINES, INC. v. BOZARDT et al.

CARLEY, Judge.

This is a wrongful death action in which appellant, International Business Machines, Inc. (IBM) is only one of several defendants. Appellee-plaintiff's decedent was struck by an automobile being driven by IBM's co-defendant Henner, an employee of IBM. Appellee's complaint alleges that Henner was an employee of IBM and was acting within the scope of his employment at the time and place of the concerned incident. IBM, relying upon Henner's deposition and answers to appellee's interrogatories, moved for summary judgment on the grounds that at the time of the concerned incident Henner was traveling to dinner and was not acting within the scope of his employment. The trial court denied the motion but certified the order for interlocutory review. IBM's application for interlocutory appeal was granted in order that we might review the trial court's ruling in light of the Supreme Court's decision in *Allen Kane's Major Dodge, Inc. v. Barnes,* 243 Ga. 776 (257 SE2d 186) (1979).

It is a recognized principle under Georgia law that when an employee is involved in a collision, while operating his employer's vehicle, a presumption arises that he is acting within the scope of his

employment. *West Point Pepperell v. Knowles,* 132 Ga. App. 253 (208 SE2d 17) (1974). Once this presumption arises the burden then shifts to the employer "to rebut the presumption by evidence that is 'clear, positive and uncontradicted' and that shows the servant was not in the scope of his employment." *Massey v. Henderson,* 138 Ga. App. 565 (1) (226 SE2d 750) (1976).

Recognizing the aforestated premises, the Supreme Court in *Kane* held that once the employer or employee presents positive and uncontradicted evidence that the employee's activities at the time and place in question were not within the scope of his employment, the plaintiff must show some other fact—other than the fact which gave rise to the initial presumption—from which a jury could infer that the employee was acting within the scope of the employment. In determining what "other fact" must be shown in order to submit a given case to the jury, the court stated: "If this 'other fact' is *direct* evidence, that is sufficient for the case to go to a jury. However, when the 'other fact' is *circumstantial* evidence, it must be evidence sufficient to support a verdict in order to withstand the defendant's motion for summary judgment." *Kane,* supra at 780.

At the time of the hearing on the defendant-employer's motion for summary judgment in *Kane,* supra, the trial court had before it the following evidence: One Underhill was an employee of Allen Kane's Major Dodge, Inc. and was driving a used car owned by Allen Kane which he was permitted to use as personal transportation when the concerned collision occurred. In rebuttal to the presumption which arose from the foregoing facts, the trial judge had "the uncontradicted affidavit of Underhill that at the time of the collision (late at night) he was engaged in a purely personal mission — i.e. barhopping — and was not attempting to further Allen Kane's business in any manner." *Kane,* supra at 777. In addition, there was evidence that while Underhill was without authority to consummate the sale of a vehicle other than at the dealership's premises during regular business hours, he was allowed to solicit prospective purchasers at any time and that salesmen like Underhill were provided with an automobile, at least partially, for that reason.

In reversing the trial court's grant of the employer's motion for summary judgment, this court found the fact that Underhill had unrestricted authority to solicit prospective purchasers was an "additional circumstance" sustaining the presumption of the master-servant relationship. See *Barnes v. Allen Kane's Major Dodge,* 148 Ga. App. 332 (250 SE2d 876) (1978). However, the Supreme Court disagreed, stating: ". . . 'the unrestricted authority to solicit prospective purchasers' is circumstantial evidence and further it is not inconsistent with Underhill's testimony showing that despite

this fact, at the time of the accident in question, he was not acting within the scope of his employment. We find that not only does this circumstantial evidence not *demand* a finding for the plaintiff on the issue, it constitutes a 'mere inconclusive inference' and thus is insufficient to get plaintiff by defendant's motion for summary judgment on that question." *Kane,* supra at 781.

Notwithstanding the fact that Henner was driving a rental car the expense of which was fully paid by IBM (as opposed to being owned by IBM), IBM concedes that from the facts of this particular case the presumption arose that Henner was acting within the scope of his employment at the time appellee's decedent was struck. However, IBM contends that Henner's testimony on deposition and answers to appellee's interrogatories rebutted said presumption. The record reveals that appellee propounded the following interrogatory to Henner: "At the time of the occurrence complained of, was the defendant acting within the scope of his employment?" Henner's response thereto: "No. This defendant was on his way to dinner." In his deposition, Henner never stated positively that he was *not* acting within the scope of his employment or in the furtherance of his master's business at the time of the concerned incident. Rather, Henner stated that he was on his way to dinner and recited additional information relative to his stay in Atlanta.

Assuming without deciding that the aforesaid testimony of Henner is sufficiently "clear, positive and uncontradicted" evidence to overcome the presumption that he was acting within the scope of his employment at the time of the concerned incident, the record contains several "other facts" within the meaning of the *Kane* case which show that there remain genuine issues for jury determination and that, therefore, summary judgment was properly denied.

The factual situation in the case at bar is distinguishable from that of the *Kane* case. The pertinent facts in this case as adduced from the deposition of Henner are as follows: At the time of the concerned incident resulting in the death of appellee's decedent, Henner was an employee of IBM and was stationed in New York. However, during the week in which appellee's decedent was killed, Henner was in Atlanta solely for the purpose of attending and participating in a series of conferences regarding a certain product marketed by IBM. IBM paid for his airplane fare to Atlanta, his meals and lodging while in Atlanta, and for the automobile which he rented (and which he was driving at the time of the fatal occurrence) at Hartsfield Airport upon his arrival in Atlanta. Henner testified that he did not use the rented vehicle to travel between his hotel and the site of the convention as IBM provided buses for such travel. He further testified that it was his usual practice to rent a car when out of

town, that IBM expected him to do so and that the company would pay for any reasonable use of the car. In particular, Henner testified that IBM realized he would use the rented vehicle to travel, within reason, to restaurants for meals. On the other hand, IBM would not reimburse him for entertainment expenses. Henner further stated that at the time of the mishap, he and two other IBM employees were traveling from the Peachtree Plaza Hotel where he was staying to a restaurant in the Atlanta area and that they were going to dinner and no other place. The evidence — construed most strongly in favor of appellee — indicates that while the meetings being held at the convention hall might have ended for the day in question, the actual convention was not concluded until the day following the day of the incident resulting in the death of appellee's decedent.

Contrary to the contentions of IBM, the aforesaid testimony constitutes additional, direct, as opposed to circumstantial, evidence that Henner was acting within the scope of the employment. This additional evidence creates genuine issues of material fact and provides the required "other facts" from which a jury could legitimately infer that Henner was acting within the scope of his employment. Accordingly, the matter should be resolved by the trior of fact. Compare *Stenger v. Mitchell,* 70 Ga. App. 563 (28 SE2d 885) (1944) and *Nichols v. G. L. Hight Motor Co.,* 65 Ga. App. 397 (15 SE2d 805) (1941).

Furthermore, the case at bar presents an issue which is not directly addressed or decided in the *Kane* decision, to wit: Whether or not for the purposes of imposing liability on the employer under the doctrine of respondeat superior an employee away from his home at the express directions of his employer, while lodging in public accommodations, going to or returning from a meal, is performing an act in the scope of his employment or necessarily incident thereto. In *American Oil Co. v. McCluskey,* 119 Ga. App. 475, 477 (167 SE2d 711), citing *Fielder v. Davison,* 139 Ga. 509, 511 (77 SE 618) (1913), this court stated: " '... [T]he general rule is that a master is liable for the tort of his servant, whether negligent or voluntary, if done by his command or in the prosecution and scope of his business. [Cit.] The expressions, "in the scope of his business," or "in the scope of his employment," or similar words, have sometimes been given too narrow a meaning. A master rarely commands a servant to be negligent, or employs him with the expectation that he will commit a negligent or wilful tort; but if the act is done in the prosecution of the master's business, that is, if the servant is at the time engaged in serving the master, the latter will be liable. [Cit.]' " The court further stated at 478, " '[a] servant is acting within the scope of his employment when he is engaged in doing for his master what he has

been directed to do, or, as it has been said, "any act which can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of that act, or a natural, direct, and logical result of it" is within the meaning of the phrase "scope of employment." . . .' "

While there is no Georgia decision in the context of respondeat superior directly on point, there are several workers' compensation cases dealing with the question of employees whose jobs require them to be out of town in pursuit of their master's business and which are instructive on the scope of employment issue presented by the particular facts in the case at bar.

In *Thornton v. Hartford Accident & Indem. Co.*, 198 Ga. 786 (32 SE2d 816) (1945), Mr. Thornton, a traveling salesman, was staying at a hotel in Athens, Georgia. He went from the hotel across the street for dinner, fell and suffered a fatal injury. In finding that Thornton's injury occurred "in the course of his employment" within the meaning of Code Ann. § 114-102, the Supreme Court stated: "A traveling salesman is taken away from his home or headquarters by his employment; and, because of the nature of his work, he usually can not return home each night. He must of necessity eat and sleep in various places in order to further the business of his employer; and the employer recognizes these necessities and usually pays the expenses of his lodging and meals, as was done in this case. While lodging in a hotel or preparing to eat, or while going to or returning from a meal, he is performing an act incident to his employment, unless he steps aside from his employment for personal reasons. Such an employee is in continuous employment, day and night. This does not mean that he can not step aside from his employment for personal reasons, or reasons in no way connected with his employment, just as might an ordinary employee working on a schedule of hours at a fixed location. He might rob a bank; he might attend a dance; or he might engage in other activities equally conceivable for his own pleasure and gratification, and ordinarily none of these acts would be beneficial or incidental to his employment. The eating of meals, while a pleasure indulged in by a traveling salesman and all mankind, is as necessary to the continuance of his duties as the breath of life; and where his duties take him away from his home, his acts of ministration to himself should not — and we believe do not — take him outside the scope of his employment, so long as he performs these acts in a normal and prudent manner." *Thornton,* supra, 790. Furthermore, the court reasoned: "Counsel for the respondents urge that a traveling salesman is no longer in the course of his employment when his usual duties for the day are completed. With this view we can not agree. We think the sounder rule to be that expressed by the Court of Appeals in [*Railway Express Agency v. Shuttleworth,* 61 Ga.

App. 644 (7 SE2d 195) (1940)], where the court said: 'We are unwilling to say that an employee who is required to be away from home about the business of his employer will not be allowed compensation for an injury which occurs by reason of the fact that he has to eat or sleep during that time. Proper food and proper rest are necessary and incidental to the performance of the labor required...'" *Thornton,* supra, 791.

In *General Fire & Cas. Co. v. Bellflower,* 123 Ga. App. 864 (182 SE2d 678) (1971), Bellflower, a bus driver from Macon, was killed in Jacksonville, Florida, while "off duty" between trips. His employer provided rooms at company expense at a Jacksonville hotel located near the bus station for rest and sleeping by out-of-town drivers between trips. The employer provided a flat allowance of 4% of gross earnings for out-of-town maintenance such as meals. Bellflower was killed while returning to the hotel from a restaurant approximately two blocks away. In affirming the award of compensation by the Workers' Compensation Board, the court held at 867: " 'The words "in the course of the employment" relate to the time, place, and circumstances under which the accident takes place, and an accident arises in the course of the employment when it occurs within the period of employment at a place where the employee may reasonably be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto.' *New Amsterdam Cas. Co. v. Sumrell,* 30 Ga. App. 682, 688 (118 SE 786). In our opinion the status of a bus driver who is required to be away from home overnight is substantially analogous to that of a traveling salesman required to remain away from home."

As previously noted, these workers' compensation cases are not directly applicable to the issues of negligence and respondeat superior presented in the case at bar. However, the reasoning employed therein in determining whether or not the particular injury in question occurred during the scope of the employee's employment appears to be sound and logical and we see no reason why the same logic should not apply to the case at bar. For the foregoing reasons, we conclude that issues of fact remain as to whether or not Henner was acting within the scope of his employment or performing acts necessarily incidental thereto at the time of the concerned incident. Accordingly, the trial court did not err in denying IBM's motion for summary judgment.

*Judgment affirmed. Quillian, P. J., and Shulman, J., concur.*

ARGUED JULY 9, 1980 — DECIDED NOVEMBER 24, 1980 — REHEARING DENIED DECEMBER 10, 1980 — ■

*Nicholas C. Moraitakis,* for appellant.
*Robert A. Elsner, Oliver B. Dickins, Jr., Assistant U. S. Attorney, Edgar A. Neely, Jr., Daniel S. Reinhardt, Daryll Love,* for appellees.