### A92A0577. BRADDY v. COLLINS PLUMBING & CONSTRUCTION, INC.
#### (420 SE2d 806)

ANDREWS, Judge.

Braddy appeals the grant of summary judgment to Collins Plumbing & Construction, Inc., in his suit arising from an automobile wreck involving Collins' employee driving a company truck.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. [Cit.] A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden of the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case." *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991).

" 'Summary judgment should be granted only in those cases where . . . undisputable, plain and palpable facts exist on which reasonable minds could not differ as to the conclusion to be reached.' [Cit.]" *Indian Trail Village v. Smith,* 139 Ga. App. 691, 693 (2) (229 SE2d 508) (1976).

Viewed with all inferences and reasonable doubts in favor of Braddy, *Eiberger v. West,* 247 Ga. 767, 769 (1) (281 SE2d 148) (1981), the evidence presented with the motion for summary judgment by the

affidavits of Lamb and Collins showed the following. Lamb was a mechanic for Collins Plumbing & Construction and was working at the time of the accident on a sewage pumping station located at the base of the new Talmadge Bridge in Savannah.

He was paid by the hour and clocked in at 7:00 a.m. At 5:45 a.m., on July 17, 1990, while driving from his home directly to the work site, Lamb was involved in an accident with Braddy several miles from the work site.

He was driving a pickup truck owned by Collins Plumbing & Construction, Inc. at the time of the wreck. Lamb's affidavit stated, with regard to the use of the pickup, that his employer "as a convenience and benefit to [Lamb], gave me permission to drive the . . . truck to and from home and work without any charge to me which I considered a benefit to me. . . . Had the accident not occurred, I would not have stopped anywhere before reaching my intended destination which is the job site. . . ."

Lamb's affidavit further stated that at the time of the accident, he was "not on or about the business of my employer, . . . I was not doing anything for my employer's benefit and was not at the time of the accident being paid for my time. . . . I had not yet begun my work day."

Collins' affidavit stated that Lamb had access to the truck owned by Collins which he used at work during the day. As a "convenience and benefit" to Lamb, he was permitted to drive the truck home and to return the next day. Lamb "did not do any work or thing of benefit for Collins Plumbing in driving the pickup truck to and from his residence. The permission granted . . . was intended entirely and exclusively as a benefit or privilege granted to him without any benefit to Collins Plumbing." It further stated that, at the time of the wreck, Lamb "was not on or about the business of Collins Plumbing and was not in the scope of any employment for Collins Plumbing.

These affidavits were dated, respectively, June 26 and June 28, 1991.

Thereafter, in August, both Lamb and Collins were deposed.

Lamb testified that there had been no discussion of his use of the truck when he was talking to Collins about a job, but that his supervisor gave him permission to use the truck. It was his custom to leave his home in Port Wentworth around 5:45 a.m., allowing him to arrive at the job site about 6:15 a.m. Upon his arrival at the job site, he would unlock the gate, check all the equipment, and make sure everything was ready for the work day. He did this so that his helpers could get moving on the job earlier. The other employees usually arrive between 6:30 a.m. and 6:45 a.m. although no one was on the clock until 7:00 a.m.

The pickup truck he drove was equipped with an overhead rack

and side bins with three compartments on each side of the truck. The truck also had a two-way radio. The radio was used during the work day for communication with the job site. As described by Lamb, "[i]f I had to leave one job and go to another job to pick up something, maybe they had forgot to tell me to pick this up and they'd radio. . . ."

He had used the radio on one occasion while on his way to work to call his superintendent when the truck ran out of gas. The superintendent brought him gas in response to the call.

If he had not had the use of the truck, he would have gone to the Collins' shop first every morning to pick up the truck before going to the job sites.

Collins deposed that Lamb had permission to use the truck although Collins recalled no discussion of the use of a company truck when he interviewed Lamb for employment. Collins considered the use of the truck a "benefit that's attractive" when trying to find employees. A second employee occupying the same relative position as Lamb also had use of a company truck. The racks and bins in Lamb's truck were used to store parts for the jobs as well as tools, both Lamb's and those of other workers. Collins was aware that Lamb was usually the first worker on the job and if he had begun work before 7:00 a.m., it would have been with Collins' permission.

"The general rule of respondeat superior follows: When a servant causes an injury to another, the test to determine if the master is liable is whether or not the servant was at the time of the injury acting within the scope of his employment and on the business of the master. [Cits.] 'Where a vehicle is involved in a collision, and it is shown that the automobile is owned by a person, and that the operator of the vehicle is in the employment of that person, a presumption arises that the employee was in the scope of his employment at the time of the collision, and *the burden is then on the defendant employer to show otherwise.*' [Cits.] *This must be done by clear, positive and uncontradicted evidence.* [Cit.]" (Emphasis supplied.) *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776, 777 (257 SE2d 186) (1979).

"[E]ven positive and uncontradicted testimony by the employer and the employee that the employee's activities were not within the scope of his employment does not overcome as a matter of law the presumption if plaintiff had any other evidence (that is other than the fact that the vehicle belongs to the driver's employer) from which a jury could legitimately infer that the employee was acting within the scope of his employment. [*F. E. Fortenberry & Sons, Inc. v. Malmberg*, 97 Ga. App. 162, 165 (102 SE2d 667) (1958)]." *Allen Kane's Major Dodge*, supra at 778.

"[C]ircumstantial evidence which could be taken as inconsistent

with the direct, positive testimony [denying the act was within the scope of employment] is sufficient to get the case to a jury [as will inconsistent direct evidence]." (Emphasis deleted.) Id. at 781.

There is insufficient evidence of either a direct or circumstantial nature to show facts other than the ownership of the vehicle which would indicate his taking the truck to and from his home was for the benefit of his employer.

Under this state of facts, grant of summary judgment to Collins was appropriate. *Allen v. Milton Martin Enterprises,* 197 Ga. App. 119, 120 (397 SE2d 586) (1990); *West Point Pepperell v. Knowles,* 132 Ga. App. 253, 256 (1 a) (208 SE2d 17) (1974). Cf. *Coffee Chrysler-Plymouth-Dodge v. Nasworthy,* 198 Ga. App. 757 (403 SE2d 453) (1991); *Reese v. Ga. Power Co.,* 191 Ga. App. 125, 128 (3) (381 SE2d 110) (1989); *Fred A. York, Inc. v. Moss,* 176 Ga. App. 350 (335 SE2d 618) (1985).

*Judgment affirmed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED JULY 9, 1992.

McCorkle, Pedigo & Johnson, Carl S. Pedigo, Jr., David H. Johnson, for appellant.

Hunter, Maclean, Exley & Dunn, Arnold C. Young, Darrin L. McCullough, for appellee.