A97A0897. HARGETT'S TELEPHONE CONTRACTORS, INC. et al.
v. McKEEHAN.
(491 SE2d 391)

RUFFIN, Judge.

Catherine McKeehan was killed when her car collided with a truck driven by Jeffrey Dickson. McKeehan's estate ("McKeehan") brought this personal injury action, which includes allegations that Dickson caused the collision and that his employers, Hargett's Telephone Contractors, Inc. ("Hargett") and BellSouth Telecommunications, Inc. ("BellSouth") are liable for his actions through the doctrine of respondeat superior. The trial court denied Hargett's and Bell-South's motions for summary judgment, in which the companies sought to show that Dickson was not acting as their employee at the time of the incident. We granted this interlocutory appeal to review the trial court's order and, for the following reasons, reverse.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's

case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." (Emphasis in original.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

The record in this case shows BellSouth contracted for Hargett's services in constructing utility lines in the Gainesville and Athens, Georgia areas. Hargett outsourced some of this work, including work in Forsyth County, Georgia, to Dickson. Hargett paid Dickson on a production basis, per foot of utility cable buried, and also paid him per hour for some duties. A clause in Dickson's contract required him to physically conduct quality inspections "in accordance with telephone company practices and procedures," and Hargett penalized him $100 for each defect in the work.

On Sunday, March 6, 1994, Dickson left his home in Oconee County and drove to Forsyth County with the "main objective" of conducting quality inspections on line he had buried for Hargett. Although the contract required these inspections, neither Hargett nor BellSouth had specifically instructed Dickson to conduct any inspections or do any work on that Sunday. Dickson testified that he was not scheduled to work for Hargett or BellSouth that day, and that no one at either company knew he was making the inspections. Dickson drove his personal truck, as neither Hargett nor BellSouth provided him a vehicle or reimbursed him for mileage.

During the day, Dickson made some inspections, stopped for a personal purchase at a fishing equipment store, and scouted new residential developments which might yield him more work. Late in the afternoon, on his way home, he stopped at Wal-Mart in Gainesville and purchased fishing tackle. As he drove from Wal-Mart towards his home, he was involved in the collision which gave rise to this suit.

Although Hargett and BellSouth argue they bear no liability for Dickson's acts because he was an independent contractor rather than an employee, we need not decide that issue. Even assuming Dickson was BellSouth's and Hargett's employee, and viewing the evidence under the standards set forth in *Lau's Corp.*, supra, we find no facts in the record that would support a jury's finding that Dickson was acting in the scope of his employment at the time of this accident.

" 'To hold a master liable for a tort committed by his servant, it must appear that *at the time of the injury* the servant was engaged in the master's business and not upon some private and personal matter of his own; that is, the injury must have been inflicted in the course of the servant's employment. *The test is not that the act of the servant was done during the existence of the employment, but whether the servant was at that time serving the master.'* . . . [Cits.]" (Emphasis in original.) *Schofield v. Cox Enterprises*, 212 Ga. App. 354, 355

(441 SE2d 693) (1994). "The law is clear that in the absence of special circumstances a servant in going to and from work in an automobile acts only for his own purposes and not for those of his employer." *Chappell v. Junior Achievement &c.*, 157 Ga. App. 41, 42-43 (276 SE2d 98) (1981). Here, Dickson was going home after visiting several work sites, and we find no "special circumstance" removes this case from the general rule.

In *Chappell*, on which McKeehan heavily relies, the employee was driving a vehicle that his employer provided so the employee could attend a special function. We noted that an exception to the general rule exists " 'where the vehicle is taken to the employee's home because the employee's possession of it enables him more conveniently to perform some duty for the master.' [Cit.]" Id. at 43. *Chappell* does not control this case because Dickson drove his own vehicle and was not reimbursed for mileage. Also inapplicable are similar cases involving the principle that an employee is presumed to be acting in the scope of employment when driving his employer's vehicle, such as in *Gordy Constr. Co. v. Stewart*, 216 Ga. App. 882, 883 (456 SE2d 245) (1995), and *Intl. Business Machines v. Bozardt*, 156 Ga. App. 794, 796 (275 SE2d 376) (1980).

We also reject McKeehan's argument that the "special mission" exception, as set forth in *Jones v. Aldrich Co.*, 188 Ga. App. 581, 582 (1) (373 SE2d 649) (1988), applies to these facts. We noted in *Aldrich Co.* that "[a]n exception to the general rule is to be made . . . where the employee undertakes a special mission at the direction of the employer. [Cit.] As it is said, '[w]here the employee, before or after customary working hours, is on his way home after performing . . . some special service or errand or the discharge of some duty incidental to the nature of his employment in the interest of, or under [the] direction of, his employer, and an injury arises en route from the . . . place of performance of the work to the home, such injury is considered as arising out of and in the course of the employment.' [Cits.]" Id. at 583 (1).

McKeehan argues that the circumstances of Dickson's collision fit this exception because he was on his way home after performing, at uncustomary hours, a duty "incidental to the nature of" his work and "in the interest of" his employer. We disagree, as such a broad interpretation of the exception would devour the general rule of no liability. Any time an employee drives home from the workplace after working uncustomary hours, he or she does so after performing duties "incidental to" his or her work and "in the interest of" his or her employer. The exception stated in *Aldrich Co.* is narrower and requires that the errand or mission itself be a "special" or uncustomary one made at the employer's request or direction. See id.

The facts of *Aldrich Co.* illustrate such a situation. As we

observed in *Riel v. Paulding County Bd. of Ed.*, 206 Ga. App. 230, 232 (1) (425 SE2d 305) (1992), in *Aldrich Co.* the collision occurred as the employee drove home after making a "special errand," an off-hours business trip to a job site *some distance from her usual workplace*. Id. at 582-583. Similarly, in *Bozardt*, supra, the employee was driving to eat dinner while on a special business trip, far from his home and his usual place of work, "at the express [direction] of his employer." Id. at 797. In *Moffitt v. Hutchinson*, 210 Ga. App. 295, 296 (435 SE2d 707) (1993), we reiterated that the "special mission" exception exists " 'when the employee *undertakes a special mission at the direction of (his) employer.* . . .' " (Emphasis in original.) Moreover, as we held in *Smith v. Travelers Ins. Co.*, 139 Ga. App. 45, 47-48 (227 SE2d 868) (1976), an employee's trip is not a "special mission" if it involves nothing more than travel to his or her usual place of work.

Here, although Dickson was required by contract to perform the quality inspections he undertook the day of the collision, these duties were part of his regular work for Hargett and BellSouth. He drove to his usual job sites to conduct these inspections. Nothing in the record suggests Hargett or BellSouth required that he make a special trip that Sunday to inspect. Likewise, no evidence suggests the inspections could not have been made as part of his everyday rounds. Therefore, his trip to perform those duties can in no way be considered a "special mission" or errand done at the direction of his employer. See *Smith*, supra.

Because the evidence and all reasonable inferences construed in McKeehan's favor show a lack of evidence to support McKeehan's theory that Dickson was acting in the scope of his employment with Hargett and BellSouth, we reverse the trial court's opinion with direction that summary judgment be entered for BellSouth and Hargett as to any liability based on respondeat superior.

*Judgment reversed with direction. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED AUGUST 5, 1997 —
RECONSIDERATION DENIED AUGUST 18, 1997 — ▉▉▉▉▉▉▉▉

*Greer, Klosik & Daugherty, Robert J. McCune, Cooper & Avery, Gary M. Cooper, Ernest R. Bennett, Jr., J. Henry Walker IV, James R. Thompson*, for appellants.

*Michael J. Bowers, Attorney General, C. Latain Kell, Senior Assistant Attorney General, Barnhart, O'Quinn & Williams, Terry E. Williams, Husby, Myers & Stroberg, William A. Myers, Winship E. Rees*, for appellee.