A11A0453. FARZANEH v. MERIT CONSTRUCTION COMPANY, INC.
(710 SE2d 839)

BARNES, Presiding Judge.

While commuting to work in a vehicle that he personally owned, David Redic struck and severely injured a pedestrian crossing the street. Following the collision, the injured pedestrian, Peyman Farzaneh, brought this civil tort action against Redic's employer, Merit Construction Company, Inc., seeking to recover damages for his injuries. The trial court granted Merit's motion for summary judgment, concluding that the uncontroverted evidence showed that Redic was not acting in the course and scope of his employment when he injured Farzaneh, and, therefore, that Merit could not be held liable under the doctrine of respondeat superior. For the reasons discussed below, we affirm.

On appeal from a trial court's grant of summary judgment, our review of the record is de novo, and we construe the facts and all inferences drawn from them in the light most favorable to the nonmoving party. *Ins. Co. &c. of Pa. v. APAC-Southeast*, 297 Ga. App. 553 (677 SE2d 734) (2009). Summary judgment is appropriate if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). A defendant who will not bear the burden of proof at trial does not need affirmatively to disprove the plaintiff's case, but may point to an absence of evidence in the record to support some essential element of the plaintiff's cause of action. *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010). If the defendant points to an absence of evidence in the record, the plaintiff cannot rest on his pleadings, but must identify specific evidence giving rise to a triable issue of fact. Id. If the

plaintiff cannot identify specific evidence, summary judgment is properly granted to the defendant. Id. Guided by these principles, we turn to the record here.

The record shows that Merit Construction performs "build outs" of commercial and retail office space and has between 15 to 20 jobs in progress at any given time. Merit has approximately 30 to 35 "field employees," i.e., laborers who work at assigned job sites. It does not have a central office where all of its field employees report at the beginning of the work day; rather, its foremen, carpenters, and other laborers are assigned to particular job sites and commute to those locations directly from their homes in the morning.

One of Merit's field employees was David Redic. Beginning on September 30, 2008, Merit assigned Redic to work at a specific job site in Atlanta.[1] On October 3, 2008, Redic was due at the job site at 6:00 a.m. Shortly before that time, while driving directly from his home to the assigned job site, Redic struck and severely injured Farzaneh as he was crossing a street on foot. No one else was in the vehicle with Redic when the collision occurred.

When he struck Farzaneh, Redic was driving his personally owned pickup truck, which he had purchased from Merit in July 2007. Merit had sold the truck to Redic at a price below fair market value and on favorable payment terms. By the time of the collision, Redic had paid in full for the truck, and title had been transferred to him. Redic, not Merit, paid for insurance on the truck. Although Merit would from time to time provide maintenance and repairs for private vehicles its employees used for company-related business, Merit did not arrange for any maintenance or repairs to be performed on Redic's truck after the sale. The parties dispute whether part of Redic's compensation included a predetermined "vehicle allowance" or stipend for using his personal truck rather than a company vehicle to perform work-related tasks. According to Merit's office manager, the stipend was not intended to reimburse employees for travel to and from work in their personal vehicles, but rather for company-related business such as picking up supplies and transporting them to a job site.

In his pickup truck, Redic had a Merit-issued "direct connect" cellular telephone and a Merit-issued power screw gun.[2] He did not make or receive any calls on the phone prior to or at the time of the collision. Redic was not bringing any equipment or supplies to the job site for other Merit employees.

---

[1] The parties dispute whether Merit assigned Redic to work as a foreman or a carpenter at the job site in question.

[2] The "direct connect" feature allowed Redic to use his cellular phone in a manner similar to a walkie-talkie when speaking with other Merit employees.

Farzaneh commenced this personal injury suit against Merit, contending that it was liable for his injuries under the doctrine of respondeat superior. Merit answered and denied liability. Following discovery, both parties moved for summary judgment. After briefing and a hearing, Farzaneh withdrew his motion for summary judgment, and the trial court granted Merit's motion for summary judgment. In its order, the trial court concluded that the uncontroverted evidence showed that when the collision occurred, Redic was simply commuting to work in a vehicle that he personally owned. As such, the trial court concluded that there was no rebuttable presumption that Redic was acting in the scope and course of his employment under the burden-shifting framework set out in *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776, 777-778 (257 SE2d 186) (1979), and no competent evidence that would permit a jury to find Merit vicariously liable in this case. Farzaneh now appeals from the trial court's summary judgment order.

Farzaneh contends that the trial court erred in granting summary judgment to Merit because genuine issues of material fact exist as to whether Redic was acting in the course and scope of his employment when the collision occurred. We disagree.

Under Georgia law,

[t]o hold a master liable for a tort committed by his servant, it must appear that *at the time of the injury* the servant was engaged in the master's business and not upon some private and personal matter of his own; that is, the injury must have been inflicted in the course of the servant's employment. *The test is not that the act of the servant was done during the existence of the employment, but whether the servant was at that time serving the master.*

(Citation omitted; emphasis in original.) *Clo White Co. v. Lattimore*, 263 Ga. App. 839, 840 (590 SE2d 381) (2003). While a jury frequently must resolve whether an employee acted in furtherance of his master's business and within the scope of his employment at the time an injury was inflicted, the evidence in some cases is so plain and undisputable that the court may resolve a respondeat superior claim as a matter of law. See, e.g., *Braddy v. Collins Plumbing &c.*, 204 Ga. App. 862 (420 SE2d 806) (1992).

"[I]t is well established that an employee on the way to work is not in the course of his employment but rather is engaged in a personal activity." *Riel v. Paulding County Bd. of Ed.*, 206 Ga. App. 230, 231 (1) (425 SE2d 305) (1992). See *Chattanooga Publishing Co. v. Fulton*, 215 Ga. 880, 883 (3) (114 SE2d 138) (1960). But if the employer owned the vehicle driven by the employee, a presumption

arises that the employee was acting in the course and scope of his employment at the time of the accident. *Allen Kane's Major Dodge*, 243 Ga. at 777. See *Hicks v. Heard*, 286 Ga. 864, 865 (692 SE2d 360) (2010). Once the presumption arises, the burden shifts to the employer to rebut it through uncontradicted evidence showing that the employee was not in the course and scope of his employment. *Allen Kane's Major Dodge*, 243 Ga. at 778. If the employer comes forward with uncontradicted evidence, the presumption is overcome as a matter of law, unless the plaintiff has additional evidence (other than the fact that the vehicle was owned by the employer) from which a jury could reasonably infer that the employee was acting within the course and scope of his employment when the accident occurred. Id.

The presumption discussed in *Allen Kane's Major Dodge* does not apply under the particular facts of this case, and so the burden never shifts to Merit. The uncontroverted evidence shows that when the collision occurred, the pickup truck driven by Redic was personally owned by him. Redic had paid for the truck in full and held its title free and clear of an interest once held by Merit. And although Farzaneh emphasizes that Merit originally owned the truck and previously sold it to Redic at a price below fair market value and on favorable payment terms, the pertinent issue is the status of the truck *at the time of the collision*. See *Clo White Co.*, 263 Ga. App. at 840 (relevant time period for determining respondeat superior liability is "time of the injury"). Because the undisputed evidence demonstrates that Redic was driving his personally owned truck at that time, no presumption arises that he was acting in the course and scope of his employment with Merit when he collided with Farzaneh. See *Williams v. Baker County*, 300 Ga. App. 149, 152-153 (1) (684 SE2d 321) (2009) (presumption did not arise where employee "was driving his own personal vehicle"); *Gassaway v. Precon Corp.*, 280 Ga. App. 351, 355 (634 SE2d 153) (2006) (same); *Johnstown Financial Corp. v. Roper*, 170 Ga. App. 575, 576 (317 SE2d 634) (1984) (same). Compare *Barfield v. Royal Ins. Co. of America*, 228 Ga. App. 841, 844-845 (2) (492 SE2d 688) (1997) (employee was driving vehicle owned by employer); *Bell v. Stroh Brewery Co.*, 209 Ga. App. 850, 851 (434 SE2d 812) (1993) (employee was driving company-leased car); *Allen v. Milton Martin Enterprises*, 197 Ga. App. 119 (397 SE2d 586) (1990) (employee was driving vehicle owned by employer).

Given that the presumption of *Allen Kane's Major Dodge* does not apply, there is an absence of competent evidence to support a finding that the present case falls outside the longstanding rule that commuting to work is a purely personal matter. Nevertheless, Farzaneh contends that this case involves "special circumstances" warranting the imposition of respondeat superior liability upon

Merit. See *Hunter v. Modern Continental Constr. Co.*, 287 Ga. App. 689, 691 (652 SE2d 583) (2007) (applying special circumstances exception); *Clo White Co.*, 263 Ga. App. at 840 (same). Contrary to his contention, however, the fact that Redic had a Merit-issued "direct connect" cell phone with him, kept at least one Merit-issued tool in his truck, and may have received a "vehicle allowance" as part of his compensation does not create a special circumstance here. Georgia courts have previously held that similar facts were insufficient to create respondeat superior liability for an employer. See *Hicks*, 286 Ga. at 867-868 (employee "on call" at time of accident); *Hankerson v. Hammett*, 285 Ga. App. 610, 612-613 (1) (647 SE2d 319) (2007) (employee was "on call" and was driving truck "loaded with parts and materials"); *Tyner v. Comfort Rest Sleep Products*, 236 Ga. App. 423, 425 (512 SE2d 321) (1999) (employee was driving vehicle containing "employer's materials"); *Schofield v. Cox Enterprises*, 212 Ga. App. 354 (441 SE2d 693) (1994) (employee received vehicle stipend); *Braddy*, 204 Ga. App. at 864 (employee was driving truck with a two-way radio installed for communicating to employer; truck contained parts and tools for use of other employees); *Fred A. York, Inc. v. Moss*, 176 Ga. App. 350, 351-352 (335 SE2d 618) (1985) (employee had beeper in car); *Johnstown Financial Corp.*, 170 Ga. App. at 576-577 (stipend issued to employee for vehicle expenses).[3]

Farzaneh also emphasizes that when hired by Merit, Redic was required to execute a form insurance document entitled "Commercial Auto Fleet Safety Policy," which provided in part: "Operation of motor vehicles is a necessary part of our business operations. Operation of motor vehicles exposes our company to losses, financially through damaged property, and injury to employees or injuries to members of the general public and to our company's reputation." The document went on to list criteria that would disqualify a Merit employee from being one of its "authorized drivers," with that term defined to include "drivers of company owned vehicles, employees operating personal vehicles on company business and any authorized family members." Farzaneh contends that this policy document shows that employees' use of their personal vehicles was essential to Merit's business, and thus indicates that Redic's driving of his personal vehicle to work fell within the course and scope of his employment. We are unpersuaded. The policy document is simply intended to set out what will disqualify an employee from being an

---

[3] Special circumstances do exist where at the time of the collision, an employee is talking on his cell phone discussing matters of company business or is distracted by an incoming business-related call. See *Hunter*, 287 Ga. App. at 691; *Clo White Co.*, 263 Ga. App. at 840. However, as previously noted, Redic was not using his Merit-issued cell phone when the collision occurred.

"authorized driver" for Merit and should be read no broader than that. Furthermore, the policy document refers specifically to personal vehicles operated "on company business," and there is nothing in the document to suggest that merely commuting to work at the beginning of the day was intended to constitute "company business." Therefore, Redic's execution of the policy document does not create a special circumstance justifying the imposition of liability upon Merit.

Additionally, Farzaneh contends that this case involves a special circumstance because Redic did not commute to a fixed work location at the beginning of every workday. According to Farzaneh, there should be an exception to the rule that an employee commuting to work is engaged in a purely personal activity, where the employee is traveling from home directly to an assigned work site, as opposed to traveling first to a central office before dispersing to a work site.[4] But Farzaneh's position is inconsistent with *Braddy*, where we upheld the grant of summary judgment to the employer, a plumbing and construction company, even though the employee was "driving from his home directly to the work site" at the time of the morning accident. 204 Ga. App. at 863.

Farzaneh relies upon *Intl. Business Machines v. Bozardt*, 156 Ga. App. 794 (275 SE2d 376) (1980), for his contention that a special circumstance exists where an employer directs an employee to commute to an assigned job site rather than a central office, but that case is clearly distinguishable. In *Bozardt*, the employee was stationed in New York but had traveled to Atlanta to attend a series of conventions at the specific direction of his employer. Id. at 796. The employer paid for his airplane fare, meals, and lodging while in Atlanta. Id. At the time of the accident in question, the employee was driving from his hotel to a restaurant in a rental vehicle paid for by his employer. Id. In contrast, the present case involves an employee simply commuting to his job site in his personally owned vehicle, not an employee who had traveled out of town to attend a special event at the direction of an employer who had agreed to pay for the transportation. Compare also *Lewis v. Miller Peanut Co.*, 77 Ga. App. 380, 384 (1) (49 SE2d 221) (1948) (employer required employee to travel by daylight between two separate cities, for which the employee received compensation and reimbursement of all of his travel expenses).[5]

---

[4] We note that this is not a case where the employee was traveling *between* job sites once the workday has already begun.

[5] To the extent that *Bailey v. Murray*, 88 Ga. App. 491, 496 (77 SE2d 103) (1953), and *Davies v. Hearn*, 45 Ga. App. 276, 278-281 (2) (164 SE 273) (1932), can be construed as involving special circumstances, those cases are distinguishable because the employee was

Even if the facts in this case fail to disclose any special circumstances, Farzaneh maintains that this case involves a "special mission" from which a jury could find that Redic was acting within the course and scope of his employment. It is true that an employer can be held liable under respondeat superior principles where the employee has undertaken a special mission at the direction of his employer. See *Hunter*, 287 Ga. App. at 691; *Clo White Co.*, 263 Ga. App. at 840. But the special mission exception requires "that the errand or mission itself be a special or uncustomary one, made at the employer's request or direction." (Citation and punctuation omitted.) *Patterson v. Southeastern Newspapers*, 243 Ga. App. 241, 242 (1) (533 SE2d 119) (2000). See *Hargett's Telephone Contractors v. McKeehan*, 228 Ga. App. 168, 171 (491 SE2d 391) (1997). And in commuting to an assigned job site as he did every day of the work week, Redic was not on an errand or mission that could be characterized as special or uncustomary. Compare *Chappell v. Junior Achievement of Greater Atlanta*, 157 Ga. App. 41, 42 (276 SE2d 98) (1981) (employer provided company vehicle to employee to attend a special function required by his employment). Hence, the evidence plainly demonstrates that the special mission exception is not applicable in this case.

Lastly, we note that throughout his appellate brief, Farzaneh relies upon workers' compensation cases in arguing that Merit should be held vicariously liable for the injuries caused by Redic. See, e.g., *Mark the Mover v. Lancaster*, 234 Ga. App. 319 (506 SE2d 673) (1998); *Indem. Ins. Co. of North America v. Bolen*, 106 Ga. App. 684 (127 SE2d 832) (1962); *American Mut. Liability Ins. Co. v. Casey*, 91 Ga. App. 694 (86 SE2d 697) (1955). But "[t]he laws of workers' compensation and negligence are different, and . . . an employee can be said to be within the scope of employment for workers' compensation purposes, and not within the scope of employment for negligence purposes." *Gassaway*, 280 Ga. App. at 354-355. And while *Bozardt*, 156 Ga. App. at 799, cited to workers' compensation cases to buttress the decision reached in that case, *Bozardt* is clearly distinguishable from the present action for the reasons discussed supra.

For these combined reasons, the trial court did not err in granting Merit's motion for summary judgment. Although the underlying facts of this case are indeed tragic, the uncontroverted evidence shows that at the time of the collision, Redic was engaged in the purely personal matter of commuting to work and, therefore, was not acting in the course and scope of his employment when he injured Farzaneh. It follows that, as a matter of law, Merit cannot be

---

driving a company vehicle when the accident occurred.

held vicariously liable for Farzaneh's injuries under the doctrine of respondeat superior.

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED MAY 19, 2011.

*Bell & Mulholland, Lloyd N. Bell, James D. Summerville*, for appellant.

*John D. Rogers, Jr.*, for appellee.