**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 16, 2014**

# In the Court of Appeals of Georgia

A14A0455. CGL FACILITY MANAGEMENT, LLC v. WILEY

BARNES, Presiding Judge.

Keiana Wiley died when Michael Thad Clay crossed the center line in his employer's pickup truck and hit Wiley's car head-on. Clay's blood tested positive for methamphetamine. Bryant Wiley, acting as the administrator of his wife's estate and her surviving spouse, sued Clay for wrongful death and sued Clay's employer, CGL Facility Management, LLC, under theories of respondeat superior and negligent hiring, retention, entrustment, and maintenance. The defendants answered, and following discovery, CGL moved for summary judgment, arguing that Clay was not on the job when the collision occurred and that no evidence supported Wiley's other claims. The trial court denied the motion without explanation but granted a certificate of immediate review, and this court granted CGL's application for interlocutory

appeal. For the reasons that follow, we reverse the trial court's denial of summary judgment to CGL on Wiley's claims of liability under theories of respondeat superior, negligent hiring and retention, and negligent training and maintenance, but affirm the denial of summary judgment on Wiley's negligent entrustment claim.

> On appeal from a grant of summary judgment, we conduct a de novo review, and we view the evidence and the inferences drawn from it in the light most favorable to the nonmoving party. A defendant demonstrates entitlement to summary judgment by showing that the record lacks evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case. The defendant does not need to affirmatively disprove the plaintiff's case, but may prevail simply by pointing to the lack of evidence. If the defendant does so, the plaintiff cannot rest on his pleadings, but must point to specific evidence that gives rise to a triable issue of fact.

*Upshaw v. Roberts Timber Co.*, 266 Ga. App. 135 (596 SE2d 679) (2004).

Viewed in the light most favorable to Wiley, the evidence showed that in 1995, Clay began working for the State at the Milledgeville Youth Detention Center (YDC), first in the warehouse, then in maintenance as an apprentice locksmith. In 2001, the State privatized the maintenance of its Department of Juvenile Justice (DJJ) facilities and CGL obtained the contract. Clay applied for a job with CGL and underwent a criminal background check and drug test. When asked at deposition whether there

2

were "any issues at all with either a drug test or [his] criminal background history when [he was] hired by CGL," Clay invoked his Fifth Amendment right to not incriminate himself. He testified that after CGL ran a motor vehicle history report on him, he began working as a locksmith at the Milledgeville YDC and other facilities, specializing in locks and door.

The State closed the Milledgeville YDC in 2008, and Clay remained at the facility for a year as its sole maintenance man. In 2009 he accepted CGL's offer of a management position in Augusta, overseeing the Augusta Regional Development Center (RYDC), the Augusta YDC, and a Georgia Bureau of Investigation crime lab. CGL provided him with a vehicle beginning in August 2010, and Clay began commuting to Augusta to work.

Clay testified that the management position in Augusta involved "a lot of paperwork" and the supervision of four employees, and that after a year he was demoted after an audit revealed "a lot of deficiencies." The August YDC had no on-site vehicle and the facility was very large, so while Clay was allowed to keep the company truck after his demotion to commute to and from work, other employees used the truck to run errands after Clay arrived at the work site. CGL also continued to pay for insurance, gas, and maintenance on the truck. Clay's co-worker testified

3

that after the demotion, Clay began coming in 30 minutes to an hour late and was "griping" that the new supervisor told him he had to start being at work on time.

Clay testified that he had a motor vehicle accident in 1991 in Florida where he hit someone. He was not sure if anyone was injured or whether litigation ensued, and when asked if he was cited for criminal charges, he took the Fifth. He also "slid into" another car in a Walmart parking lot on an unspecified date, but he and the other driver just exchanged insurance information and let their insurers take care of it rather than involving the police. In 2004, he was hit from behind while driving the company truck, reported the wreck to CGL, and was off work for a week with whiplash.

In the December 11, 2011, collision that led to this lawsuit, Clay suffered serious injuries and was out of work for a time. CGL reassigned him to a facility in Macon closer to his house and he returned to light duty work in January 2012. He was given a formal reprimand shortly afterward for using a state computer for personal reasons and using the company credit card to put gas in his personal car, then fired at the end of February 2012 for deficient performance.

CGL's Director of Human Resources, who was hired in March 2011, testified that before June 2012, either the company or the facility to which an employee was assigned ran pre-hiring drug tests and criminal background checks on all job

4

applicants.[1] It did not run subsequent background checks unless there was a reason to do so. CGL also ran motor vehicle reports (MVRs) on new hires, but after that first report it relied on its insurer to monitor its employees' driving records. The company ran MVRs on all new employees regardless of whether they were given a company vehicle, because each facility had an on-site vehicle available to the employees to use as needed. CGL relied on its employees to self-report any subsequent arrests or tickets, and if they did so the company would then run a new MVR and background check.

When Clay was demoted from his supervisory position, CGL allowed him to keep the company truck due to his lengthy commute, but although typically when an employee was demoted his file contained related paperwork, there was no documentation about that in Clay's file. The director had investigated a subordinate's complaint about Clay's attitude while he was a supervisor, but no documentation existed as to that investigation. Finally, CGL employees were supposed to receive annual reviews, but there were few written reports in any employees' files regarding those reviews prior to the current director's employment, and only one review in

---

[1]In June 2012, a new company bought CGL and now runs background checks on all potential employees.

Clay's file. Clay was not reviewed at the end of 2011 because he was out after the crash, and the director asked his supervisor not to review him when he returned because he was not at full capacity and she thought it would not be fair to review him then.

CGL enumerates three errors: the trial court erred in denying summary judgment on Wiley's claim that CGL was liable for Clay's negligence under respondeat superior, in finding an issue of fact as to whether CGL is liable for negligent hiring, retention, or entrustment, and in finding an issue of fact as to whether CGL is liable for negligent maintenance. We affirm the trial court's denial of summary judgment on Wiley's negligent entrustment claim but reverse as to the other claims.

1. CGL argues that the record contains no evidence to support Wiley's claim that the company was vicariously liable for Clay's negligence under a theory of respondeat superior. We agree.

When an employee is involved in a collision while operating a vehicle owned by his employer, a presumption arises that he is acting within the scope of his employment. *International Business Machines v. Bozardt*, 156 Ga. App. 794, 794-795 (275 SE2d 376) (1980). The burden then shifts to the employer "to rebut the

6

presumption by evidence that is clear, positive and uncontradicted and that shows the servant was not in the scope of his employment." (Citations and punctuation omitted.) Id. If the employer presents evidence that the employee was not acting within the scope of his employment,

> [t]he employer is thereafter entitled to summary judgment unless "other facts" are proffered — that is, additional evidence other than the fact that the vehicle was owned by the employer — from which a jury could reasonably infer that the employee was acting within the course and scope of his employment when the accident occurred. Where the "other facts" are direct evidence, such is sufficient for the case to go to the jury. Where the "other facts" are circumstantial, however, such evidence will not defeat the employer's motion for summary judgment, unless it is sufficient to support a verdict in the plaintiff's favor.

(Footnotes omitted.) *Littlefield Constr. Co. v. Bozeman*, 314 Ga. App. 601, 603-604 (1) (725 SE2d 333) (2012).

Here, the fact Clay was employed by CGL and driving a company truck raised the presumption he was acting within the scope of his employment when the wreck occurred. CGL rebutted the presumption by showing that Clay was on his way from home to work, and the burden thus shifted to Wiley to show "other facts" from which a jury could infer that Clay was acting within the course and scope of his employment

7

when the collision occurred, either with direct evidence or circumstantial evidence that would be sufficient to support a verdict. Clay testified that he was simply driving to work when the crash occurred. He was not on his cell phone to his employer, and he was not performing any errands for CGL on his way to work. The only evidence Wiley can summon is that the truck was occasionally used by other employees once Clay arrived at the YDC facility, but that usage does not change the fact that while he was driving to work, Clay was performing a purely personal errand.

"[Clay] was driving the [truck] to fulfill his duty of arriving at work on time, and no evidence showed that [Clay] was undertaking a duty at [CGL's] direction at the time of the accident. In the absence of such evidence, [CGL] could not be held vicariously liable for [Clay's] torts." *Dougherty Equipment Co. v. Roper*, ___ Ga. App. ___ (Case No. A14A0620, decided May 1, 2014). Accord, *Banks v. AJC Intl., Inc.*, 284 Ga. App. 22, 24-25 (1), (2) (643 SE2d 780) (2007) (although driving company vehicle, employer entitled to summary judgment because employee was not prosecuting business of employer or undertaking special mission at employer's direction); *Braddy v. Collins Plumbing*, 204 Ga. App. 862, 863-864 (420 SE2d 806) (1992) (insufficient evidence contradicted employee's statement that he was driving work vehicle for the purpose of getting to work and nothing more).

8

Accordingly, the trial court erred in denying summary judgment to CGL on Wiley's claim that CGL could be vicariously liable for Clay's negligence.

2. CGL contends that the trial court erred in denying its motion for summary judgment based on Wiley's negligent hiring, retention, and entrustment claims.

a. *Negligent Hiring and Retention.*

[For] an employer to be liable for an automobile accident under the theory of negligent hiring and retention where, as here, the allegation is that the employee had a bad driving record and where the injured driver was merely a member of the general public on the public highway, the accident could not have occurred while the employee was simply commuting to work but had to occur while the employee was engaged in the employer's business.

(Citations and punctuation omitted.) *Dougherty Equipment Co.*, ___ Ga. App. at ___. Because Clay was not acting in the scope of his employment when he crossed the center line on his way to work and collided with the car driven by Wiley's wife, CGL was also entitled to summary judgment on Wiley's negligent hiring and retention claim.

b. *Negligent Entrustment.*

Under the theory of negligent entrustment, liability is predicated not on the doctrine of respondeat superior but on a negligent act of the owner

9

in lending his vehicle to another to drive, with actual knowledge that the driver is incompetent or habitually reckless, and this negligence must concur, as a part of the proximate cause, with the negligent conduct of the driver on account of his incompetency and recklessness.

(Punctuation and citation omitted.) *Gill Plumbing Co. v. Macon*, 187 Ga. App. 481, 482-483 (2) (370 SE2d 657) (1988). A plaintiff may present circumstantial evidence that an employer has actual knowledge of an employee-driver's habitual negligence. *Ed Sherwood Chevrolet v. McAuley*, 164 Ga. App. 798, 802 (1) (298 SE2d 565) (1982). For example, when an employer's insurer, acting as the employer's agent, inquires into the employee's driving record, a jury might "infer that the matters contained within that driving record would be discovered." Id. "Furthermore, a plaintiff in a negligent entrustment action is not limited to showing actual knowledge of the entruster inasmuch as that plaintiff may show actual knowledge of a pattern of reckless driving or facts from which such knowledge could reasonably be inferred." (Citation and punctuation omitted; emphasis in original.) *Gill Plumbing Co. v. Macon*, 187 Ga. App. at 483 (2).

In this case, Wiley introduced evidence that, in addition to testing positive for methamphetamine and amphetamine after the collision at issue here, Clay's license was suspended in 1989 after his third conviction for driving under the influence. His

10

previous DUIs occurred in 1984 and 1986, and in conjunction with the 1986 DUI he was also convicted of obstructing a police officer and simple battery. CGL's human resources director testified that, although Clay's personnel file contained no record of any pre-employment screening, company policy was to run MVRs on all potential new hires, and either CGL or the client in whose facility the employee would be working would run drug tests and criminal background checks. Additionally, Clay testified that when CGL hired him, he submitted to drug tests and the company ran a criminal background check on him.

Clay's testimony, along with the testimony of the human resource director that company policy was to run an MVR on every prospective employee, creates a question of fact as to whether CGL had actual knowledge of Clay's pattern of driving while impaired. Given this evidence, a jury must resolve the issue of whether Clay's prior DUIs indicated that he would drive under the influence again and whether CGL negligently entrusted him with a company vehicle.

CGL argues that even if it knew about Clay's driving or criminal history, the offenses were too remote in time to create any liability issues for the company. We conclude that whether this prior knowledge created a direct liability under a theory of negligent entrustment on CGL's part for the damages resulting from Clay's early

11

morning head-on collision is a question of fact for the jury to determine rather than a question of law for this court to decide.

"Based on [circumstantial evidence of CGL's actual] knowledge of a series of serious driving infractions by an employee, there is a question of fact on the issue of negligent entrustment." *Dougherty Equipment Co.*, ___ Ga. App. at ___ (2).

3. Finally, CGL argues that the trial court erred in denying summary judgment on Wiley's claims of negligent training and maintenance, and we agree. The record contains no evidence of negligent training, nor does Wiley argue the point in his appellate brief. As to the maintenance of the company truck, when asked if it had experienced any mechanical defects before the accident, Clay responded that he had had a flat tire and was driving on the full-size spare that came with the truck when the collision occurred. Wiley presented no evidence that the full-sized spare tire contributed in any way to the head-on collision. We therefore agree with CGL that the trial court erred in denying the company's motion for summary judgment on Wiley's negligent training and maintenance claims.

*Judgment affirmed in part and reversed in part. Boggs and Branch, JJ., concur.*

12