**FIFTH DIVISION**
**RICKMAN, P. J.,**
**REESE, P. J., and MARKLE, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**January 14, 2021**

# In the Court of Appeals of Georgia

A20A1991; A20A1992. DMAC81, LLC v. NGUYEN et al.; and vice versa.
MA-066
MA-067

MARKLE, Judge.

As Gary Kai Cummings drove to work during inclement weather in January 2018, he lost control of his car and struck another vehicle, killing Tuan Minh Nguyen (Tuan) and Tuan's brother-in-law. Tuan's wife, Hong Hoa T. Nguyen (Nguyen) sued Cummings and his employer, DMAC81, LLC, for negligence, respondeat superior, and negligent hiring and retention. DMAC81 moved for summary judgment on the issue of whether the accident occurred while Cummings was in the course andr scope of his employment. The trial court granted summary judgment in part and denied it in part, and this Court granted interlocutory review. DMAC81 now appeals from the partial denial of its motion for summary judgment in Case No. A20A1991, and

Nguyen appeals from the partial grant of the motion in Case No. A20A1992. For the reasons that follow, we conclude that DMAC81 was entitled to summary judgment on both grounds. Accordingly, we reverse in Case No. A20A1991, and we affirm in Case No. A20A1992.

"On appeal from a trial court's grant or denial of summary judgment, our review of the record is de novo, and we construe the facts and all inferences drawn from them in the light most favorable to the nonmoving party." (Citation and punctuation omitted.) *Centurion Indus., Inc. v. Naville-Saeger*, 352 Ga. App. 342, 343 (834 SE2d 875) (2019).

So viewed, the record shows that, at the time of the accident, Cummings worked for McAllister's Deli, which was owned by DMAC81. His usual job was to work on the grill line, but he also assisted the catering manager with deliveries. If he was scheduled to make a catering delivery, he would usually go into work early and prep the grill line for lunch before making the delivery using his own car. On several occasions, he was called in on his day off to help with catering. As an hourly employee, Cummings was only paid for time once he clocked in, and he had to have the general manager's permission to come in early when there was a delivery

2

scheduled. When he made deliveries, he would receive a cash payout to cover the cost of gas in addition to his hourly pay.

The day before the accident, Cummings worked his usual shift. He was scheduled to work at 10 a.m. the following morning, but the general manager called him around 8 a.m. and asked him if he could make a catering delivery. The area was under a state of emergency due to a winter storm, but Cummings and the general manager did not discuss the weather. Cummings did not feel like he could say no to the general manager's request, and he agreed to make the catering delivery.[1]

Cummings left his house a little earlier than usual in order to get to work and prep the grill line before taking the delivery. At about 9:35 a.m., while on the commute into work, Cummings lost control of his car and struck another vehicle that was in the emergency lane, killing Tuan and his brother-in-law. Cummings was only a few minutes away from work when the accident occurred.

A blood test after the accident confirmed that Cummings had marijuana in his system at the time of the accident, and it is undisputed that Cummings took some pain

_____

[1] Although there was conflicting testimony regarding whether the general manager instructed Cummings to come in early, whether Cummings had ever been called on his day off to make a delivery, and whether he could have refused to make the delivery without being fired, we consider the testimony in the light most favorable to the plaintiffs, as the non-movants. *Centurion Indus., Inc.*, 352 Ga. App. at 343.

3

medication and smoked marijuana after his shift the day before the accident. DMAC81's assistant general manager, who was Cummings's friend, knew that Cummings sometimes used marijuana, but DMAC81 did not conduct background checks or review driving histories before allowing employees to make deliveries. It did include a question on its employment application inquiring about any accidents or tickets within the last three years. As such, DMAC81 was unaware that Cummings had prior arrests more than seven years earlier for marijuana possession and traffic tickets for reckless driving and DUI.

After the accident, Nguyen filed suit on behalf of herself and as the administrator of Tuan's estate, claiming that Cummings and DMAC81 were negligent, and that DMAC81 was liable under a theory of respondeat superior as well as for negligent hiring and retention. DMAC81 moved for summary judgment, arguing that Cummings was not acting in the course and scope of his employment at the time of the accident. DMAC81 also asserted that the general rule was that an employer was not liable for conduct that occurred while the employee was commuting to work, and neither the exception for special circumstances nor special mission applied under the facts of this case.

The trial court granted the motion in part and denied it in part, finding that there were no special circumstances that would have imputed liability to DMAC81 because Cummings was commuting to his usual place of work, but that there was a jury question regarding whether Cummings was on a special mission for DMAC81 at the time of the accident. The trial court certified its order for immediate review, and this Court granted the interlocutory application, leading to these appeals, in which both DMAC81 and Nguyen assert that the trial court erred in applying the exceptions.

Before we consider these specific arguments on appeal, we first set out the general law concerning an employer's vicarious liability for the acts of its employees.

> Every master shall be liable for torts committed by his servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily. When a servant causes an injury to another, the test to determine if the master is liable is whether or not the servant was at the time of the injury acting within the scope of his employment and on the business of the master. The test is not that the act of the servant was done during the existence of the employment, but whether the servant was at that time serving the master. While a jury frequently must resolve whether an employee acted in furtherance of his master's business and within the scope of his employment at the time an injury was inflicted, the evidence in some cases is so plain and undisputable that the court may resolve a respondeat superior claim as a matter of law. . . . There is a longstanding

5

general rule that an employee is engaged in a purely personal matter while commuting to or from work.

(Citations and punctuation omitted.) *Centurion Indus., Inc.*, 352 Ga. App. at 344-345 (1); see also OCGA § 51-2-2.[2]

There are exceptions to this general rule that are relevant to this appeal: the special circumstances exception and the special mission exception. We will consider each in turn.

*Case No. A20A1992.*

1. In Case No. A20A1992, Nguyen argues that the trial court erred in finding that the special circumstances exception did not apply because catering was beneficial to DMAC81's business, Cummings had been called into work early on the day of the accident, and he was not able to decline his employer's special request. We are not persuaded.

---

[2] Because Cummings was driving his own car, as opposed to his employer's, there is no presumption that he was acting in the scope of his employment. *Centurion Indus., Inc.*, 352 Ga. App. at 345 (1); *Farzaneh v. Merit Constr. Co., Inc.*, 309 Ga. App. 637, 639-640 (710 SE2d 839) (2011). Compare *Dougherty Equip. Co., Inc. v. Roper*, 327 Ga. App. 434, 436-437 (1) (a) (757 SE2d 885) (2014) (discussing burden shifting analysis that applies when employee is driving employer's vehicle at time of accident, and thus the presumption applies).

6

"The law is clear that in the absence of special circumstances a servant in going to and from work in an automobile acts only for his own purposes and not for those of his employer." (Citation omitted.) *Hargett's Telephone Contractors, Inc. v. McKeehan*, 228 Ga. App. 168, 170 (491 SE2d 391) (1997). Some relevant factors include whether the employee was carrying work materials or using a cell phone or pager for work-related calls; whether the employee received a stipend for the use of his vehicle; or whether the employee was "on call." *Farzaneh v. Merit Constr. Co., Inc.*, 309 Ga. App. 637, 641 (710 SE2d 839) (2011); see also *Clo White Co. v. Lattimore*, 263 Ga. App. 839, 840 (590 SE2d 381) (2003) (employee's use of cell phone for work at time of the accident raised factual question about special circumstances exception); *Chappell v. Junior Achievement of Greater Atlanta*, 157 Ga. App. 41, 42-43 (276 SE2d 98) (1981).

None of those factors are applicable here. Cummings was making his usual commute to the deli at the time of the accident. He was traveling in his own car, and had not yet clocked in. See *Dougherty Equip. Co., Inc. v. Roper*, 327 Ga. App. 434, 437 (1) (a) (757 SE2d 885) (2014) (employee in accident on commute into work was not performing duty for employer but was performing *his duty* to arrive on time for his job). He was not using a cell phone or conducting any business for his employer

7

during this commute, and, although Cummings would receive additional pay for the delivery to cover the cost of gas, he was not being paid for the time it took him to commute. See *Archer Forestry, LLC v. Dolatowski*, 331 Ga. App. 676, 679 (3) (771 SE2d 378) (2015) (no special circumstances existed to hold employer liable where employee was on commute home with his son in the employer's car, but there was no evidence he was engaged in any work-related phone calls during the drive). Compare *Hunter v. Modern Continental Constr. Co.*, 287 Ga. App. 689, 691 (652 SE2d 583) (2007) (factual question about whether employee was on cell phone with a co-worker during commute to work raised jury question about special circumstances exception); *Clo White Co.*, 263 Ga. App. at 840.

The fact that Cummings may have been "on call" to make deliveries on other days does not make this a special circumstance, especially where, as here, Cummings was already scheduled to work his regular shift that morning. See *Farzaneh*, 309 Ga. App. at 641; *Williams v. Baker County*, 300 Ga. App. 149, 153 (1), n. 12 (684 SE2d 321) (2009) (listing cases that have rejected "on-call" status as a special circumstance). Compare *Patterson v. Southeastern Newspapers, Inc.*, 243 Ga. App. 241, 244 (1) (533 SE2d 119) (2000) (fact that on-call employee was responding to a

8

call at the time of the accident is evidence that accident occurred in scope of employment).

We therefore conclude that Nguyen has identified no special circumstances that would warrant application of this exception. To interpret the exception as Nguyen suggests would effectively impose liability on employers any time an accident occurred during the employee's commute, and we decline to interpret the exception so broadly. As a result, the trial court properly granted DMAC81 summary judgment on this issue, and we affirm the trial court's ruling in this respect.

*Case No. A20A1991.*

2. In Case No. A20A1991, DMAC81 argues that the trial court erred in finding that there was a factual question whether the special mission exception applied because there was no evidence from which the jury could find Cummings was engaged in a special mission at the time of the accident. It contends that asking Cummings to report to his regular job site early, and making a delivery during bad weather, do not qualify as special missions. We agree.

> Under the "special mission" exception, where the employee, before or after customary working hours, is on his way . . . from his home to perform, some special service or errand or the discharge of some duty incidental to the nature of his employment in the interest of, or under

9

> direction of, his employer, and an injury arises en route from the home
> to the place where the work is performed, . . . such injury is considered
> as arising out of and in the course of the employment.

(Citations and punctuation omitted.) *Centurion Indus., Inc.*, 352 Ga. App. at 345-346 (1); see also *Betsill v. Scale System, Inc.*, 269 Ga. App. 393, 396 (1) (604 SE2d 265) (2004). For the special mission exception to apply, "[t]he special mission must be made at the employer's request or direction." *Centurion Indus., Inc.*, 352 Ga. App. at 345 (1). It is not enough that the commute is "incidental to" or "in the interest of" the employer. See *Hargett's Telephone Contractors, Inc.,* 228 Ga. App. at 170. Rather, the focus is on the mission itself and whether it is "special" or "uncustomary" and "made at the employer's request or direction." Id.

Here, the evidence showed that Cummings was scheduled to work his regular shift the morning of the accident, and he was commuting to work a few minutes earlier than usual to prepare his work station prior to making the delivery. He was not being paid for his commute time, and he was headed into his usual job site to complete his normal job tasks *before* making the delivery. Nothing about the events were special or uncustomary. He was not using a company car, or making business-related calls during the commute, and DMAC81 did not control the manner in which

10

Cummings commuted. See *Hargett's Telephone Contractors, Inc.*, 228 Ga. App. at 170 ("an employee's trip is not a 'special mission' if it involves nothing more than travel to his or her usual place of work.").

Nguyen argues that this case is controlled by *Patterson v. Southeastern Newspapers, Inc.*, 243 Ga. App. 241 (533 SE2d 119) (2000). But that case is distinguishable. In *Patterson*, a salaried employee, who oversaw distribution of the newspaper and covered for absent drivers, was called into work outside his normal schedule to fill in for a delivery person. 243 Ga. App. at 241-242. After completing the delivery route, he was involved in an accident while driving home. Id. at 242. In finding that there was a factual question whether the employee was involved in a special mission, this Court relied on cases from other states and noted that the employee's shift was a special request from the employer, and the employer gained an incidental benefit from using its salaried employees to fill in on delivery routes. Id. at 243 (1).

But this case is not like *Patterson*. Although Cummings was going to make the delivery that day at DMAC81's request, he was already scheduled to work his regular shift, and he was commuting to work to complete tasks for that regular shift at the time of the accident. Only after he completed those tasks would he have made the

11

delivery that formed the basis of the alleged special mission. In other words, the delivery, which may have been at the employer's request, would have occurred during his normal work shift and was unconnected to the commute to work. This difference in the timing of the special request sets this case apart from *Patterson*'s reasoning. See *Dougherty Equip. Co., Inc.*, 327 Ga. App. at 437 (1) (a) (employee in accident on commute into work was not performing duty for employer, but was performing *his duty* to arrive on time for his job). Cf. *Smith v. Travelers Ins. Co.*, 139 Ga. App. 45, 47-48 (227 SE2d 868) (1976) (in the context of a worker's compensation claim, injury did not occur in scope of employment because an employee's trip is not a "special mission" if it involves nothing more than travel to his usual workplace). And, the fact that there was a winter weather advisory or state of emergency due to the weather does not transform this routine commute into a special mission. As noted, Cummings was scheduled to work his regular shift that morning and was commuting to work for that purpose regardless of the delivery request.

Moreover, *Patterson* confirms that the mission must be special or uncustomary. *Patterson*, 243 Ga. App. at 242 (1). But making deliveries when the catering manager was unavailable was not special or unusual, as the record shows that Cummings had done so on several prior occasions. Thus, Cummings was not on "some special

12

service or errand or the discharge of some duty incidental to the nature of his employment in the interest of, or under direction of, his employer" at the time he commuted into work that morning. *Centurion Indus., Inc*, 352 Ga. App. at 345-346 (1). Given all of the facts, there is no factual question about whether Cummings was on a special mission at the time of the accident.[3] To expand the special mission exception to these facts would result in the exception swallowing the rule. As such, DMAC81 was entitled to summary judgment on this issue.

3. Finally, DMAC contends that it was entitled to summary judgment on the claims for negligent hiring and retention.

It is well settled that "a defendant employer has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's tendencies or propensities that the employee could cause the type of harm sustained

---

[3] Although Cummings testified in his deposition that he did not feel like he had a choice but to make the delivery, the evidence showed that DMAC81 did not fire employees who declined to drive in inclement weather. Even if there is a factual question about his ability to decline the delivery request, that would not render summary judgment improper. The ability to fire the employee is but one factor to be considered; it is not dispositive. *Gassaway v. Precon Corp.*, 280 Ga. App. 351, 353 (634 SE2d 153) (2006) (identifying one relevant inquiry as "whether the employer retained the power to discharge his employee for failure to perform the errand.").

by the plaintiff." (Punctuation omitted.) *Munroe v. Universal Health Svcs.*, 277 Ga. 861, 863 (1) (596 SE2d 604) (2004). However,

> [for] an employer to be liable for an automobile accident under the theory of negligent hiring and retention where, as here, the allegation is that the employee had a bad driving record and where the injured driver was merely a member of the general public on the public highway, the accident could not have occurred while the employee was simply commuting to work but had to occur while the employee was engaged in the employer's business.

(Citations and punctuation omitted.) *Dougherty Equipment Co.*, 327 Ga. App. at 438 (1) (b).

Here, the allegation in the complaint was that DMAC81 knew or should have known of Cummings's history of drug use and traffic citations, which made him unsuitable for handling catering deliveries, especially in bad weather. In light of our conclusion that Cummings was commuting to work and was not engaged in DMAC81's business at the time of the accident, the claims for negligent hiring and

retention must fail.[4] Id. ; see also *Centurion Indus., Inc.*, 352 Ga. App. at 348 (2); see also *Dougherty Equip. Co.*, 327 Ga. App. at 438 (1) (b).

Accordingly, for the foregoing reasons, DMAC81 was entitled to summary judgment on all claims. We therefore affirm the trial court's ruling in Case No. A20A1992, and reverse in Case No. A20A1991.

*Judgment affirmed in Case No. A20A1992. Judgment reversed in Case No. A20A1991. Rickman, P. J., and Reese, P. J., concur.*

---

[4] Nguyen argues that these claims survive because there was evidence that the manager who hired Cummings knew that Cummings used drugs, raising a factual question about DMAC81's obligation to inquire into Cummings's driving history before allowing him to make deliveries on public roads. The flaw in this argument is that Cummings was not making the delivery at the time of the accident, and to hold employers liable for an employee's driving under the influence during a normal commute would eviscerate the general rule that employers are not liable for accidents during an employee's commute. *Centurion Indus., Inc.*, 352 Ga. App. at 348 (2); *Dougherty Equip. Co.*, 327 Ga. App. at 438 (1) (b); *TGM Ashley Lakes, Inc.*, 264 Ga. App. at 461-462 (1) (b).