In the Supreme Court of Georgia


Decided:   November 14, 2017


S17A0683.  McBEE et al. v. ASPIRE AT WEST MIDTOWN
APARTMENTS, L.P.
S17A0684.  ASPIRE AT WEST MIDTOWN APARTMENTS, L.P. v.
McBEE et al.


NAHMIAS, Justice.

Thomas R. McBee and his wife Mary A. McBee (the "McBees") and

Aspire at West Midtown Apartments, L.P. ("Aspire") are adjoining landowners

on Green Street in Atlanta.  The McBees claim title by prescription – adverse

possession for more than 20 years – to a rectangular strip of land measuring

about 24 feet by 58 feet (the "Disputed Area") located on a lot to which Aspire

holds record title (the "Aspire Lot").  Aspire used this lot and several adjoining

properties it owns to develop an apartment complex, thereby depriving the

McBees of the use of the Disputed Area.  The McBees sued Aspire, and the trial

court granted Aspire's motion for summary judgment on the McBees' adverse

possession claim.  These two appeals followed.

As  explained  below,  in  Aspire's  appeal  (Case  No.  S17A0684),  we

summarily affirm the trial court's order denying Aspire's motion to dismiss the McBees' appeal for delay in filing the record appendix. As for the McBees' appeal (Case No. S17A0683), the trial court ruled that a deed signed by Thomas McBee in 1974 shows conclusively that the McBees lack a good faith claim of right to the Disputed Area. However, the law presumes the existence of a good faith claim of right, and the evidence in the existing record does not conclusively rebut this presumption. Accordingly, we reverse the order granting summary judgment to Aspire on the McBees' adverse possession claim, and we remand the case for the trial court to consider Aspire's other arguments for summary judgment.

1. This Court reviews the grant of summary judgment de novo. See Cowart v. Widener, 287 Ga. 622, 624 (697 SE2d 779) (2010). Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). Thus,

> to prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law. A

2

defendant may do this by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims.

Cowart, 287 Ga. at 623 (citations and punctuation omitted). The McBees, as the parties opposing summary judgment, are entitled to have the evidence in the record viewed in the light most favorable to them and to have all reasonable inferences from the evidence drawn in their favor. See id. at 624.

So viewed, the record shows the following. Thomas's grandmother, Dorine McBee, once owned both the lot where the McBees live (the "McBee Lot") and the Aspire Lot, and she lived in a house on the Aspire Lot. She conveyed the McBee Lot to her son, James S. McBee, in two deeds executed in 1948 and 1955, and he built a house there, where he and his wife Earlene McBee raised their two sons, Thomas and his older brother James R. McBee. When James S. McBee died in 1961, the McBee Lot passed to his wife Earlene and their two sons. Around that time, when Thomas was seven or eight years old, he began maintaining and landscaping the Aspire Lot in addition to the McBee Lot. On October 18, 1965, Dorine McBee executed a will nominating her daughter, Betty McBee Taylor ("Aunt Betty"), as executrix; leaving half of her estate (minus $1,000) to Aunt Betty; and leaving the other half to Aunt Betty

3

as trustee for Thomas and his brother James R. until Thomas turned 21.

On December 26, 1973, Dorine McBee died. At the time, Aunt Betty and her husband were living with Dorine on the Aspire Lot; Thomas was living in Savannah. On March 9, 1974, three deeds were executed: Aunt Betty executed a deed in her capacity as executrix conveying the Aspire Lot to herself for $12,433.34; Aunt Betty executed another deed, individually and in her capacity as executrix, that quitclaimed any interest she had in the McBee Lot (it appears there was none) to "Earlene Cain McBee, Thomas R. McBee, [and] James R. McBee"; and Thomas, his mother Earlene, and his brother James R. executed a deed, "[i]ndividually and as sole surviving heirs of James S. McBee, deceased, each of grantors being sui juris," quitclaiming any interest they had in the Aspire Lot to Aunt Betty.[1]

The quitclaim deed to the Aspire Lot described the property as:

BEGINNING at a point on the south side of Green Street 394 [feet] west of the intersection of the west side of Hemphill Avenue with the south side of Green Street; thence west along the south side of Green Street, 71.5 feet; thence south 125 feet; thence east 71.5 feet; thence north 125 feet to the south side of Green Street and the point of the beginning.

---

[1] James R. McBee died in 2013.

It then said:

> THE PURPOSE of this deed is to establish proper boundary lines between properties owned by Grantors and Grantee and to correct descriptions contained in [the 1948 and 1955 warranty deeds].

The quitclaim deed to the McBee Lot contained a similarly worded description of that property's boundaries and a similar purpose provision. Thomas deposed that he did not understand the legal import of the deed he signed; he signed it because his mother told him that it was necessary in order to settle his grandmother's estate.

Aunt Betty and her husband continued to live on the Aspire Lot, and Earlene McBee continued to live on the McBee Lot. In 1977, Thomas and his wife Mary moved in with Earlene. Thomas maintained and landscaped both the McBee Lot and the Aspire Lot, including the Disputed Area.[2] That spring, Thomas acquired a large trailer with a 16-foot bed that he stored in the Disputed Area. From that point on, he used the Disputed Area for parking and to store his trailer, vehicles, machinery, automobile engines and other parts, and lumber.[3]

---

[2] Based on the survey the McBees commissioned for this litigation, Thomas deposed that the Disputed Area is bounded on the east by the driveway on the Aspire Lot, on the south by a fence that no longer exists, on the west by the McBee Lot, and on the north by Green Street.

[3] The family, including Thomas's brother and Aunt Betty and her husband, used the Disputed Area for parking as far back as the 1960's. Thomas used the area for storage as early as

5

Earlene McBee died in 1990. When Aunt Betty and her husband moved to Florida in the early 1990's, they allowed a friend from the neighborhood to stay in the house on the Aspire Lot. The woman was allowed to stay for a short time after Aunt Betty conveyed the Aspire Lot to an investor on February 18, 1993, but when the woman moved out, the house was torn down. Due to problems with vagrancy and thefts, Thomas posted "No Trespassing" signs on trees in the Disputed Area (and the McBee Lot), called the police to report trespassers, and put down concrete parking stops to prevent others from using the Disputed Area for dumping or other purposes. On June 20, 2005, the investor who bought the Aspire Lot conveyed it to a company that conveyed it and several contiguous lots to Aspire on September 29, 2014. Aspire then began construction of the apartment complex. In December 2014, with construction ongoing, Aspire sued Mary McBee and obtained a court order directing the McBees to remove the 16-foot trailer and all other items they owned from the Disputed Area.[4]

---

1967 or 1965, before he moved to Savannah, and when he got his first car in 1972, he parked it there.

[4] The record of this prior lawsuit is not included in the record in this case, and Aspire has not claimed res judicata.

On May 22, 2015, the McBees filed a complaint against Aspire to quiet title to the Disputed Area in them based on adverse possession. The McBees also alleged trespass and nuisance and sought an award of damages and attorney fees. Aspire filed an answer and counterclaims to quiet title in it and for trespass and slander of title. After discovery, the parties filed cross-motions for summary judgment in March 2016, and after a hearing in June, the trial court entered an order on July 5, 2016, denying summary judgment to the McBees and granting partial summary judgment to Aspire.[5] On July 27, 2016, the McBees filed a notice of appeal to this Court, invoking our then-existing jurisdiction over cases involving title to land.[6] Their appeal was docketed here as Case No. S17A0683.

*Case No. S17A0684 (Aspire's Appeal)*

2.     The McBees elected to prepare a record appendix for their appeal, which this Court's Rule 67 then allowed. Aspire later filed a motion to dismiss

---

[5] Aspire did not seek summary judgment on its claims for trespass and slander of title.

[6] We note that the Appellate Jurisdiction Reform Act of 2016 gives the Court of Appeals subject matter jurisdiction over "[c]ases involving title to land" in which a notice of appeal or application to appeal is filed on or after January 1, 2017. Ga. L. 2016, p. 883, §§ 3-1 (codified at OCGA § 15-3-3.1 (a) (1)), 6-1 (c) (effective date). Thus, appeals in future cases of this sort will go to the Court of Appeals instead of this Court.

7

the McBees' appeal due to their delay in filing the record appendix. The trial court denied Aspire's motion, and Aspire appealed that order; Aspire's appeal was docketed in this Court as Case No. S17A0684. The trial court's order denying Aspire's motion to dismiss the McBees' appeal adequately explains the decision, which was not erroneous, and an opinion on this issue by this Court would have no meaningful precedential value in light of the amendment to Rule 67 eliminating the record appendix procedure as of December 31, 2016. Accordingly, we summarily affirm the trial court's judgment in Case No. S17A0684. See Supreme Court Rule 59.

*Case No. S17A0683 (The McBees' Appeal)*

3.     "Title by prescription is the right to property which a possessor acquires by reason of the continuance of his possession for a period of time fixed by law." OCGA § 44-5-160. Adverse possession – the type of possession that can ripen into title by prescription – is described in OCGA § 44-5-161; among other things, the possession "[m]ust be accompanied by a claim of right," OCGA § 44-5-161 (a) (4).[7] Adverse possession of real property "for a period

---

[7] OCGA § 44-5-161 says in full:

(a)     In order for possession to be the foundation of prescriptive title, it:

8

of 20 years shall confer good title by prescription to the property against everyone except the state and those persons laboring under [certain statutory] disabilities." OCGA § 44-5-163.[8]

Properly viewed, the record shows that the McBees possessed the Disputed Area by maintaining it and using it for parking vehicles and storing personal property for far longer than the 20-year prescriptive period before Aspire filed its separate lawsuit against Mary in December 2014 to force them off the land. See Murray v. Stone, 283 Ga. 6, 6 (655 SE2d 821) (2008) (affirming a jury verdict in favor of title by adverse possession where the

(1)    Must be in the right of the possessor and not of another;
(2)    Must not have originated in fraud except as provided in Code Section 44-5-162;
(3)    Must be public, continuous, exclusive, uninterrupted, and peaceable; and
(4)    Must be accompanied by a claim of right.
(b)    Permissive possession cannot be the foundation of a prescription until an adverse claim and actual notice to the other party.

OCGA § 44-5-162 says:

(a)    In order for fraud to prevent the possession of property from being the foundation of prescription, such fraud must be actual or positive and not merely constructive or legal.
(b)    When actual or positive fraud prevents or deters another party from acting, prescription shall not run until such fraud is discovered.

[8]  The prescriptive period is shortened to seven years if the possession of real property is "under written evidence of title." OCGA § 44-5-164. The McBees do not claim to have written evidence of title to the Disputed Area.

9

evidence showed that the plaintiff used the two tracts of land for the 20-year prescriptive period "by mowing, maintaining, fencing, and placing old cars, boats, a chicken coop, basketball goals, and a driveway on them"); Burgin v. Moye, 212 Ga. 370, 374 (93 SE2d 9) (1956) ("The word 'possession' 'denotes the corporeal control of property, a state of actual occupancy, evidenced by things capable of being seen by the eye or of being ascertained by the use of the primary senses.'" (citation omitted)).

The law presumes that this possession was in good faith and accompanied by a claim of right. See Crawford v. Simpson, 279 Ga. 280, 282 (612 SE2d 783) (2005) (citing Halpern v. Lacy Inv. Corp., 259 Ga. 264, 265 (379 SE2d 519) (1989), for the proposition that an "inference of good faith claim of right [is] proper absent [a] contrary showing"); Chancey v. Georgia Power Co., 238 Ga. 397, 398 (233 SE2d 365) (1977) ("A claim of right will be presumed from the assertion of dominion . . . ."); Barfield v. Vickers, 200 Ga. 279, 281 (36 SE2d 766) (1946) ("Direct evidence of bona fides is not required. A presumption of good faith arises from adverse possession."). See also David F. Hinkel, Pindar's Georgia Real Estate Law and Procedure § 12-14 (7th ed. updated Apr. 2017) (discussing the good faith claim of right requirement).

Aspire argues that the McBees' adverse possession claim fails because in 1974, Thomas, who was then living in Savannah, signed a quitclaim deed for the Aspire Lot to his Aunt Betty, the stated purpose of which was "to establish proper boundary lines" between the Aspire Lot and the McBee Lot. The trial court accepted this argument. Relying primarily on Simmons v. Community Renewal & Redemption, LLC, 286 Ga. 6 (685 SE2d 75) (2009), the court ruled that this deed alone proved that the McBees' possession of the Disputed Area was not under a good faith claim of right, thereby dooming their claim of prescriptive title and entitling Aspire to summary judgment.

Thomas's signing of the 1974 deed may be some evidence of a lack of a good faith claim of right to possession of the Disputed Area, but it is not dispositive. Because he signed the deed, Thomas may be charged with knowledge of what it said. But knowing what the deed said about the boundaries of the Aspire Lot does not automatically demonstrate knowledge of precisely where all those boundaries lie in relation to the 24-foot-wide Disputed Area on the land south of Green Street. This Court has held that the "notice which will prevent a purchaser from acquiring a valid title by prescription must be more than constructive notice." Dyal v. Sanders, 194 Ga. 228, 235 (21 SE2d

11

596) (1942).  See also Bridges v. Brackett, 205 Ga. 637, 641 (54 SE2d 642) (1949) ("That the [claimant] may have entered into possession of land under the mistaken idea that the boundaries recited in the deed under which he claims included the land would not prevent such actual adverse possession ripening into a prescriptive title in twenty years, nor would such mistake render the possession fraudulent, for an honest mistake as to the true line is not fraud.").

Even assuming Thomas read and understood what the quitclaim deed said, the record contains no evidence that the line separating the Aspire and McBee lots was marked in any way on the ground when Thomas signed the deed in 1974 or that before this dispute arose, he or anyone else ever walked or otherwise measured the land using the metes and bounds description tied to artificial monuments (Green Street and Hemphill Avenue as they existed in 1974) to translate the contents of the deed into actual knowledge of the location of the relevant boundary line.  Viewing the evidence currently in the record in the light most favorable to the McBees – which is how we must view the evidence at this summary judgment stage of the proceeding – a jury could find that Thomas did not actually know where the boundary line was and thus was not a mere "squatter" acting in bad faith three years later in 1977 when he

12

parked a large trailer in the Disputed Area and then continued using that area, along with his wife Mary, for the next three-and-a-half decades.

The trial court's reliance on Simmons was misplaced, because in that case the claimant testified that he knew all along that the land in question belonged to someone else but nevertheless entered it with the "hostile . . . intent to use it as a parking area." 286 Ga. at 7. The law presumes that the McBees' possession of the Disputed Area was under a good faith claim of right, and a question of fact remains about whether they knew the location of the actual boundary line on the ground in 1977 and thus entered the Disputed Area in bad faith. See Bridges, 205 Ga. at 641. Accordingly, the trial court erred in ruling that there was no genuine issue regarding the McBees' lack of a good faith claim of right and therefore granting summary judgment to Aspire. Because of that erroneous ruling, the court did not address Aspire's arguments that the McBees cannot establish other elements of their adverse possession claim. The trial court should consider those arguments on remand.

Judgment reversed, and case remanded with direction in Case No. S17A0683. Judgment affirmed in Case No. S17A0684. All the Justices concur.