**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: October 11, 2023

S22G0914. PRODIGIES CHILD CARE MANAGEMENT, LLC, d/b/a UNIVERSITY CHILDCARE CENTER v. COTTON.

WARREN, Justice.

In January 2018, Bianca Bouie was returning from her lunch break to her workplace, Prodigies Child Care Management, LLC, also known as University Childcare Center ("University Childcare"), when she looked away from the road to scroll through the contacts in her cell phone so that she could call her manager to report that she was running late. While Bouie was distracted, her car crossed the median and caused an accident with a truck that was driven by Andrea Cotton. Cotton filed a personal injury lawsuit against Bouie and later added University Childcare as a defendant, alleging, among other things, that Bouie was acting in furtherance of University Childcare's business and within the scope of her employment at the time of the accident and that University Childcare was therefore liable under the

legal theory of respondeat superior. After the parties conducted discovery, University Childcare moved for summary judgment, and in April 2021, the trial court granted the motion, concluding, in pertinent part, that Bouie was not acting in furtherance of University Childcare's business and within the scope of her employment when the accident occurred. Cotton appealed, and a divided Court of Appeals panel reversed, holding that under the "special circumstances exception" to the general rule that employees do not act in furtherance of an employer's business and within the scope of employment when they are commuting to and from work or when they are on a lunch break, and under two of its cases applying that "exception," *Clo White Company v. Lattimore*, 263 Ga. App. 839 (590 SE2d 381) (2003), and *Hunter v. Modern Continental Construction Company*, 287 Ga. App. 689 (652 SE2d 583) (2007), there was sufficient evidence to raise a jury question as to the issue of liability under respondeat superior. See *Cotton v. Prodigies Child Care Management, LLC*, 363 Ga. App. 376, 378-381 (870 SE2d 112) (2022).

We granted University Childcare's petition for certiorari to address whether that holding was correct. As explained below, we take

2

this opportunity to clarify that the so-called "special circumstances exception" is merely an application of the doctrine of respondeat superior—not a separate doctrine or an "exception" to respondeat superior. And whether respondeat-superior liability attaches turns on whether an employee was acting in furtherance of her employer's business and within the scope of her employment at the time she committed a tortious act. That same framework of analysis applies whether or not the employee was commuting to or from work or on a lunch break at the time. Thus, we reject the Court of Appeals' "special circumstances exception," as well as the multi-factor test the court has developed for applying that "exception." We also conclude that *Clo White* and *Hunter*—the two cases on which the Court of Appeals relied in applying the "special circumstances exception"—used imprecise language regarding the respondeat-superior test, and we disapprove such language. In light of these conclusions, we vacate the Court of Appeals's opinion and remand the case to that court so that it can apply the proper respondeat-superior test in the first instance.

1. *Standard of Review and Factual Background*

We review the trial court's grant of summary judgment de novo.

3

*McBee v. Aspire at West Midtown Apartments, L.P.*, 302 Ga. 662, 662 (807 SE2d 455) (2017). Summary judgment is proper if the moving party demonstrates "'that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law.'" Id. at 663 (citation omitted). See also OCGA § 9-11-56 (c) (providing that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). A defendant meets this requirement if it presents "'evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims.'" *McBee*, 302 Ga. at 663 (citation omitted). As the party opposing summary judgment, Cotton is entitled to have the evidence in the record viewed in the light most favorable to her and to have all reasonable inferences from the evidence drawn in her favor. See id. at 662-663.

So viewed, the record shows the following. In January 2018, Bouie was employed as a daycare teacher at University Childcare, and she also attended college courses to earn her associate degree in early

childhood education.[1]  Bouie typically took an approximately hour-long, unpaid lunch break during her work day, and on January 26, she used her lunch break to perform in a puppet show so that she could earn extra credit in one of her courses.  Earlier that day, Bouie told her manager that she would return from her lunch break "a little bit late," likely "a little after 2[:00 p.m.]."  She clocked out for her lunch break at 12:53 p.m., drove her own car to the location of the puppet show, performed in the show, and then left around 2:20 p.m.  After she began driving back to work, she realized that she would arrive later than "a little after 2[:00]."  Intending to call University Childcare to let her manager know that she was late, Bouie looked away from the road as she held her personal cell phone in her hand and scrolled through the contacts listed in her phone to find University Childcare's phone number.  Before she was able to find the number, however, she looked up and saw that her car was in the median.  As she tried to swerve out of the way of oncoming traffic, Cotton's truck struck the passenger-side of Bouie's car.  Bouie was cited for distracted driving and failure to

---

[1] It is undisputed that University Childcare did not require Bouie to attend the courses and did not pay her tuition.

maintain lane,[2] and she admitted during her deposition that the accident was her fault.

In February 2018, Cotton filed a personal injury lawsuit against Bouie, alleging, among other things, claims of negligence and negligence per se. About a year later, she amended her complaint to add University Childcare as a defendant, claiming, among other things, that University Childcare was vicariously liable for Bouie's actions under the theory of respondeat superior, because Bouie was acting in furtherance of University Childcare's business and within the scope of her employment when she attempted to call her manager to report that she was late.[3] Specifically, Cotton asserted that because University Childcare had "strict teacher-child classroom ratios to maintain throughout the day," Bouie's attempted call was "necessary and in the interest of [University Childcare's] business and personal affairs."

---

[2] The Hands-Free Georgia Act, which (among other things) prohibits drivers from holding a cell phone in their hands, see OCGA § 40-6-241, was not in effect at the time of the accident. See Ga. L. 2018, p. 127 § 4.

[3] The amended complaint also alleged a claim of negligent training and supervision against University Childcare. That claim is not at issue here, so we will not discuss it further.

In addition, the amended complaint alleged, and Cotton later presented evidence to the trial court showing, that University Childcare had a policy directing its employees to speak with a manager "as soon as possible" if they were going to arrive late to work and that employees could be disciplined or terminated for being "absent, tardy, or leav[ing] early without prior knowledge and approval of a University Childcare Center administrator." During her deposition, Bouie testified that punctuality was "very important" at University Childcare, and she typically called her manager if she was going to be late. Cotton also presented evidence that the state of Georgia and University Childcare each established applicable regulations for teacher-to-child ratios, University Childcare had a policy enforcing those regulations, and Bouie and the two assistant teachers with whom she worked usually planned the times of their respective lunch breaks so as to maintain the required teacher-to-child ratios in Bouie's classroom.

In February 2020, University Childcare moved for summary judgment, arguing that the doctrine of respondeat superior did not apply as a matter of law because Bouie was not acting in furtherance

7

of University Childcare's business and within the scope of her employment, as the accident occurred while she was traveling back to work during her lunch break. After a hearing, the trial court granted the motion in April 2021, concluding that Cotton's theory of respondeat superior failed as a matter of law, because Bouie was not "acting within the scope of her employment or engaged in her employer's business" at the time of the accident.

Cotton appealed, and a divided panel of the Court of Appeals reversed the grant of summary judgment. *Cotton*, 363 Ga. App. at 382. The Court of Appeals explained that "[u]nder the doctrine of respondeat superior, employers are liable for an employee's tortious conduct when, at the time of the injury, the employee is acting within the scope of her employment and furthering her employer's interests." Id. at 378. The court then said that under Georgia law, employees generally do not act within the scope of employment when they are commuting to work or when they are on a lunch break, but that there are "exceptions to this general rule." The court went on:

> In this appeal, the exception at issue is whether "special circumstances" existed such that Bouie was acting within the scope of her employment while traveling to work. *Clo*

8

*White*, 263 Ga. App. at 840. Under Georgia law, the "special circumstances" exception may arise when factors such as the following are present during an employee's work commute: (1) carrying work materials in the employee's car; (2) using a phone for work-related calls; (3) receiving a stipend from an employer for a vehicle; or (4) being "on call." *DMAC81, LLC v. Nguyen*, 358 Ga. App. 170, 173 (853 SE2d 400) (2021) (citations and punctuation omitted). This court has found sufficient evidence of special circumstances to raise a jury question where an employee gets into a car accident while commuting to work when he is on the phone regarding business-related matters or is distracted by an incoming business-related call. See *Hunter*, 287 Ga. App. at 691; *Clo White*, 263 Ga. App. at 840.

*Cotton*, 363 Ga. App. at 378 (footnote omitted).

The Court of Appeals recounted Cotton's argument that under *Clo White* and *Hunter*, "Bouie's use of her cell phone in trying to find her employer's number in order to report her late arrival from lunch constituted 'special circumstances' such that she was acting within the scope of her employment at the time of the accident." Id. at 379. And after explaining the facts of those cases, the Court of Appeals said that in *Clo White*, the court held that "evidence showing that [an] employee 'may have' been on the phone regarding matters of company business at the time he caused [a] car accident was sufficient to create a jury question on the issue of special circumstances[,] rendering him within

9

the scope of employment while driving to work," *Cotton*, 363 Ga. App. at 379 (quoting *Clo White*, 263 Ga. App. at 840), and that in *Hunter* the court similarly held that "evidence showing that [an] employee 'may have been on his cell phone regarding company business when [an] accident occurred or that he might have been distracted by an incoming call from [a co-worker]' was sufficient to raise a jury question as to the existence of special circumstances and the potential for vicarious liability for the employer," *Cotton*, 363 Ga. App. at 379 (quoting *Hunter*, 287 Ga. App. at 691). Reiterating that "[t]he test for whether University Childcare may be found liable for Bouie's actions is whether she was at the time of the injury 'engaged in the master's business' or 'at that time serving the master,'" *Cotton*, 363 Ga. App. at 380 (quoting *Clo White*, 263 Ga. App. at 840), the Court of Appeals concluded that in light of "the evidence that University Childcare stressed to its employees the importance of reporting tardiness, and [that] Bouie was in the act of complying with her employer's policy when she caused the accident," the special circumstances exception applied, such that Cotton had presented sufficient evidence to raise a jury question as to whether Bouie was acting within the scope of her

employment at the time of the accident. Id. at 380-381.[4] One judge on the panel dissented, arguing that the facts presented in this case did not fall within the "special circumstance[s]" exception, so there was no factual question regarding University Childcare's liability. Id. at 382-384. University Childcare filed a motion for reconsideration, which the Court of Appeals denied, and then a petition for certiorari in this Court, which we granted.

2. *Legal Framework*

We now turn to the applicable statutory and decisional law regarding the doctrine of respondeat superior.

(a) *The Legal Doctrine of Respondeat Superior*

The Latin phrase "respondeat superior" means "let the superior make answer." *Respondeat Superior*, Black's Law Dictionary (11th ed. 2019). The common-law doctrine of respondeat superior, which is also known as the "master-servant" rule, provides that employers can be

---

[4] On this score, the Court of Appeals noted: "Although we do not agree with Cotton's insistence that Bouie's actions were affirmatively within the scope of her employment, we do conclude that University Childcare has not established as a matter of law that they were not." *Cotton*, 363 Ga. App. at 380.

11

held vicariously liable for torts committed by their employees under certain circumstances. See id.; *Chorey, Taylor & Feil, P.C. v. Clark*, 273 Ga. 143, 144 (539 SE2d 139) (2000). This principle was first codified in Georgia in 1863, see Code 1863, § 2904 (providing in pertinent part that "[e]very person shall be liable for torts committed by his . . . servant . . . by his command, or in the prosecution, and within the scope of his business whether the same be by negligence or voluntary"), and the current statute, OCGA § 51-2-2, contains substantially similar language, saying, in pertinent part, "Every person shall be liable for torts committed by his . . . servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily."

In accordance with OCGA § 51-2-2, we have explained that "'[t]wo elements must be present to render a master liable [under respondeat superior]: first, the servant must be in furtherance of the master's business; and, second, he must be acting within the scope of his master's business.'" *Piedmont Hospital, Inc. v. Palladino*, 276 Ga. 612, 613 (580 SE2d 215) (2003) (citation omitted). See also *Doe v. Saint Joseph's Catholic Church*, 313 Ga. 558, 565 (870 SE2d 365) (2022)

12

(quoting the test set forth in *Palladino*); *Quynn v. Hulsey*, 310 Ga. 473, 474 n.2 (850 SE2d 725) (2020) ("Under the doctrine of respondeat superior, '[w]hen a servant causes an injury to another, the test to determine if the master is liable is whether or not the servant was at the time of the injury acting within the scope of his employment and on the business of the master.'") (quoting *Hicks v. Heard*, 286 Ga. 864, 865 (692 SE2d 360) (2010)). In other words, the doctrine of respondeat superior holds an employer liable for the negligent or intentional torts of its employee when "'the tort was done within the scope of the actual transaction of the [employer's] business for accomplishing the ends of his employment.'" *Johnson Street Properties, LLC v. Clure*, 302 Ga. 51, 55 (805 SE2d 60) (2017) (citation omitted).

Accordingly, an employer is not liable for an employee's tort if the tort was committed "'not by reason of the employment, but because of matters disconnected therewith.'" *Clark*, 273 Ga. at 144 (citation omitted). Thus, if an employee "'steps aside'" from her employer's business "'to do an act entirely disconnected from it and injury to another results, the [employer] is not liable.'" *Clure*, 302 Ga. at 55 (citation omitted). See also, e.g., *Coe v. Carroll & Carroll, Inc.*, 308 Ga.

13

App. 777, 783 (709 SE2d 324) (2011) ("'[I]f a servant steps aside from his master's business to do an act entirely disconnected from it' or commits a tortious act 'for purely personal reasons disconnected from the authorized business of the master,' the servant is not acting in the scope of his or her employment and in the furtherance of the master's business.") (citation omitted).

In this respect, although the issue of whether an employee was acting in furtherance of her employer's business and within the scope of her employment at the time she committed a tort is generally a question for the jury, "summary judgment for the employer is appropriate where the evidence and all reasonable inferences drawn therefrom show that the employee was not engaged in furtherance of the employer's business, but was on a private enterprise of the employee's own." *Clark*, 273 Ga. at 144. Put another way, when the evidence that an employee was not acting in furtherance of her master's business and within the scope of her employment is "'plain and undisputable,'" a court may resolve a respondeat-superior claim as a matter of law. *Stembridge v. Pride Utility Construction Company, LLC*, 365 Ga. App. 296, 297 (878 SE2d 271) (2022) (citation omitted).

14

(b) *Respondeat Superior Generally Does Not Apply When an Employee Commits a Tort While Going To or From Work*

For nearly 90 years, appellate courts in Georgia have consistently held that an employee "acts only for h[er] own purposes"—and not for those of her employer—while she is going to or from work, so respondeat superior generally does not apply when an employee commits a tort during her work commute. *Chattanooga Publishing Company v. Fulton*, 215 Ga. 880, 882 (114 SE2d 138) (1960) (explaining that "[a]s a general rule, a servant in going to and from his work in an automobile acts only for his own purposes and not for those of his employer, and consequently the employer is not to be held liable for an injury occasioned while the servant is en route to or from his work," and holding that the trial court properly granted the employer's motion for judgment notwithstanding the verdict where the evidence showed that the employee was in an accident while driving the employer's truck to work, because the employee was using the truck "for a purely personal mission of his own . . . , in no way connected with the business of the owner, and not within the scope of his employment") (citation and punctuation omitted). See also, e.g.,

15

*Nguyen*, 358 Ga. App. at 173 (explaining that "'[t]he law is clear that in the absence of special circumstances[,] a servant in going to and from work in an automobile acts only for his own purposes and not for those of his employer,'" and affirming the trial court's grant of the employer's motion for summary judgment where the employee "was making his usual commute" to work when he caused an accident) (citation omitted); *Dougherty Equipment Company v. Roper*, 327 Ga. App. 434, 436-438 (757 SE2d 885) (2014) (setting forth the general rule that "an employee is deemed to act only for his own purposes while commuting to work," and reversing the trial court's denial of summary judgment for the employer, because the evidence showed that the employee, who was driving the company van from his home to the company office to "receive his assignments for the day" at the time of the accident, "was driving the van to fulfill *his* duty of arriving at work on time, and no evidence showed that [he] was undertaking a duty at [his employer's] direction at the time of the accident") (emphasis in original); *Viau v. Fred Dean, Inc.*, 203 Ga. App. 801, 803 (418 SE2d 604) (1992) (explaining the general rule that an employee "acts only for his own purposes" in commuting to and from work, and concluding

16

that the trial court erred by denying the employer's motion for summary judgment because the uncontroverted evidence showed that the employee was on his way home from work when he was involved in a collision) (citation and punctuation omitted); *Stenger v. Mitchell*, 70 Ga. App. 563, 566 (28 SE2d 885) (1944) (explaining that "[a]s a general rule, a servant in going to and from his work in an automobile acts only for his own purposes and not for those of his employer, and consequently the employer is not to be held liable for an injury occasioned while the servant is en route to or from his work," and holding that the trial court "did not err in granting [a] motion for nonsuit" filed by the owners of a car dealership, because there was no evidence to support the plaintiff's theory of respondeat superior where a salesman for the dealership caused an accident while driving a car owned by the dealership home from work); *Elrod v. Anchor Duck Mills*, 50 Ga. App. 531, 531-533 (179 SE 188) (1935) (holding that the trial court did not err in "granting a nonsuit" to a corporation where its assistant superintendent struck the plaintiff with his car while "heading for the gate to go to his work," because the assistant superintendent "was not acting within the scope of his authority as

17

agent in inflicting the alleged tort, but had only started on his way to his daily work"). See also, e.g., Restatement (Third) Of Agency § 7.07 (2006) ("In general, travel required to perform work, such as travel from an employer's office to a job site or from one job site to another, is within the scope of an employee's employment[,] while traveling to and from work is not."); Dan B. Dobbs, Paul T. Hayden, and Ellen M. Bublick, The Law of Torts § 428 (2d ed. 2023) ("The master is not vicariously responsible for the acts of a servant before work begins or after it ends. In particular, the going and coming rule holds that in jobs with a situs such as an office or factory, an employee coming to work or going home from it is not in employment."). The upshot is that as a matter of law, an employee generally does not act in furtherance of her employer's business and within the scope of her employment while she travels to or from her workplace. Thus, when an employee causes a car accident while driving to or from work, respondeat superior generally does not apply, absent some showing that the employee was otherwise acting in furtherance of her employer's

18

business and within the scope of her employment.[5]

In a related line of precedent, the Court of Appeals has consistently held that an employer generally is not vicariously liable when an employee causes a car accident during her lunch break, because the employee was on a "purely personal mission" at the time she committed the tort. *Gassaway v. Precon Corporation*, 280 Ga. App. 351, 352-354 (634 SE2d 153) (2006) (noting that an "employee is deemed to act only for his own purposes while commuting to work," and holding that the trial court properly granted summary judgment to the employer where its employee, who lived in South Carolina but was temporarily staying in Georgia for his job, caused an accident while returning to work from his extended lunch break, which he spent having lunch, securing temporary housing, and arranging for utility service). See also, e.g., *Mannion & Mannion, Inc. v. Mendez*, 355 Ga. App. 28, 31-33 (842 SE2d 334) (2020) (reversing the denial of the employer's motion for summary judgment where the uncontroverted

_____

[5] Although the Court of Appeals has applied this general, longstanding principle in dozens of cases beginning as early as 1935, it appears that this Court has implemented the rule only once, more than 60 years ago, in *Chattanooga Publishing Company*. See 215 Ga. 880.

19

evidence showed that the employee was driving to lunch with a co-worker at the time of the accident); *Matheson v. Braden*, 310 Ga. App. 585, 589 (713 SE2d 723) (2011) (affirming the trial court's grant of summary judgment for the employer, because the evidence showed that the employee was traveling to his house to eat lunch at the time of the accident); *Reese v. Georgia Power Company*, 191 Ga. App. 125, 128-129 (381 SE2d 110) (1989) (per curiam opinion affirming the trial court's grant of summary judgment to the employer, because the undisputed evidence showed that the employee was driving his employer's truck while "returning to his job site after having had lunch with his mother and sister" when he collided with the plaintiff). Like the cases about commuting to and from work discussed above, these cases impose an outer limit on the liability that flows from the doctrine of respondeat superior: an employer usually is not liable as a matter of law when an employee commits a tort while she is on her lunch break, because absent some evidence to the contrary, an employee generally is not acting in furtherance of her employer's business and within the scope of her employment at that time.

3. *There Is No Separate "Special Circumstances Exception" to the*

*Doctrine of Respondeat Superior*

As we explained above, under the doctrine of respondeat superior, an employer is liable for the tortious acts of its employee when the employee was acting in furtherance of her employer's business and within the scope of her employment at the time she committed the tort. However, as a general rule, respondeat superior does not apply, as a matter of law, when an employee commits a tort while simply going to or from work or during her lunch break. The Court of Appeals correctly acknowledged these principles, but it then went astray by applying the so-called "special circumstances exception." After noting that "Georgia law has consistently held that employees do not act within the scope of employment when they are commuting to and from work, . . . nor when they are on their lunch break," the court said that there are "exceptions to this general rule" and that "the exception at issue is whether 'special circumstances' existed such that Bouie was acting within the scope of her employment while traveling to work." *Cotton*, 363 Ga. App. at 378 (footnote omitted). The Court of Appeals then listed factors for determining when the "special circumstances exception" arises in cases involving

21

the issue of whether an employee was acting in furtherance of her employer's business and within the scope of employment during her work commute. See id. Pointing to a similar application of the "special circumstances exception" in *Clo White* and *Hunter*, the Court of Appeals concluded that the exception applied here, such that there was sufficient evidence to raise a jury issue on respondeat superior. This analysis was flawed in the following respects.

(a) First, the Court of Appeals treated the "special circumstances exception" as a separate legal doctrine that prevents the general rules about commuting and lunch breaks from applying. But as we explain below, the "special circumstances exception" is merely an application of the doctrine of respondeat superior—not a separate doctrine.[6]

---

[6] The Court of Appeals has also recognized another "exception" to the general rule that an employee who is traveling to or from work is engaged in a purely personal activity for purposes of respondeat superior. The court has held that the "special-mission exception" applies when an employee injures another person while traveling to perform a special errand at the direction of her employer before or after customary working hours. *Graham v. Hospice Savannah, Inc.*, 368 Ga. App. 91, 94-95 (889 SE2d 212) (2023). See also, e.g., *Jones v. Aldrich Company*, 188 Ga. App. 581, 582-583 (373 SE2d 649) (1988) (explaining that when an employee undertakes a special mission at the direction of the employer, the general rule that an employee going to and from work acts only for his own purposes does not apply, and concluding that the trial court erred in granting summary judgment for the employer, because

22

It appears that the "special circumstances exception" derived from language in *Hargett's Telephone Contractors, Inc. v. McKeehan*, 228 Ga. App. 168 (491 SE2d 391) (1997), which said that "'[t]he law is clear that in the absence of special circumstances a servant in going to and from work in an automobile acts only for his own purposes and not for those of his employer'" before holding that no special circumstance removed the case from that general rule, because an employee was simply on his way home from work when he caused an accident, meaning that his employers were not liable under the doctrine of respondeat superior as a matter of law. Id. at 170 (citation omitted). A few years later in *Clo White* and in *Hunter*, the court again mentioned the "special circumstances" language from *McKeehan*, eventually using the term "special circumstances exception" in several cases, including this one, that involved the question of whether an

there was evidence that the employee caused an accident while on her way home from a job site, where she performed a special errand on behalf of the employer). Cotton does not argue that the "special mission exception" applies in this case, so we need not discuss it further. However, given our conclusion about the "special circumstances exception" below, we are dubious that the so-called "special mission exception" is anything other than an application of the principles of respondeat superior.

23

employee who committed a tortious act during his or her commute to or from work or during his or her lunch break was acting in furtherance of the employer's business and within the scope of employment. See *Cotton*, 363 Ga. App. at 378-382. See also *Stembridge*, 365 Ga. App. at 300 (discussing the "special circumstances exception" and rejecting the plaintiff's argument that the exception applied because the employee received "show-up compensation that covered the cost of his commute," he had company-issued tools in his truck at the time of the accident, he was paid a "rig rate" to compensate him for his tools and truck maintenance, and the employer required him to add its name to his personal insurance policy as an additional insured); *Nguyen*, 358 Ga. App. at 173 (discussing the "special circumstances exception" and rejecting the plaintiff's argument that the exception applied because the employee was "making his usual commute" to work at the time of the accident); *Farzaneh v. Merit Construction Company*, 309 Ga. App. 637, 641 (710 SE2d 839) (2011) (discussing the "special circumstances exception" and rejecting the plaintiff's argument that it should apply because the employee had a company-issued cell phone and a company-issued tool in his truck at

24

the time of the accident and may have received a "vehicle allowance" as part of his compensation); *Hunter*, 287 Ga. App. at 691 (saying that an employer cannot be held liable for an accident that occurs while an employee is traveling to or from work unless "special circumstances" exist, and concluding that such circumstances existed); *Clo White*, 263 Ga. App. at 839 (saying that an employer cannot be held liable for an accident that occurs while an employee is traveling to or from work in the absence of "special circumstances," and concluding that such special circumstances existed).

In these cases, the Court of Appeals addressed the question of whether a plaintiff's respondeat-superior claim could overcome a motion for summary judgment by focusing its analysis on whether "special circumstances" surrounding the employee's commute suggested that respondeat-superior liability should apply. In so doing, the court created a sort of sub-doctrine of respondeat superior that applies only when an employee commits a tortious act while commuting to or from work or during a lunch break, effectively removing those scenarios from the general rules about respondeat superior and commuting that we have set forth above and risking an

25

analytical departure from those well-established principles.

In this respect, in applying the "special circumstances exception," the Court of Appeals has developed a multi-factor test that asks whether enumerated "factors such as the following are present during an employee's work commute: (1) carrying work materials in the employee's car; (2) using a phone for work-related calls; (3) receiving a stipend from an employer for a vehicle; or (4) being 'on call.'" *Cotton*, 363 Ga. App. at 378 (citing the same factors in *Nguyen*, 358 Ga. App. at 173). Such an analysis is an unwarranted restriction on the totality-of-the-circumstances evaluation inherent to an analysis of respondeat superior, including because it improperly limits the ways in which a plaintiff can prove the ultimate question of respondeat superior. Cf. *Stembridge*, 365 Ga. App. at 300 (noting these "various factors relevant to the [special circumstances] exception" but acknowledging that the Court of Appeals has "never held that such factors, standing alone, were sufficient to impose vicarious liability"). That question, by contrast, is determined by evaluating whether, given the facts of a particular case, an employee was acting in furtherance of her employer's business and within the scope of her employment—not

26

whether any specific "factor" existed.

The Court of Appeals was correct that the long-established rule is that an employee's travel to or from work is not within the scope of employment for purposes of applying the doctrine of respondeat superior. See *Cotton*, 363 Ga. App. at 378. See also, e.g., *Chattanooga Publishing Company*, 215 Ga. at 882. But when a plaintiff contends that the employee who is traveling to or from work does *something else* that is allegedly within the scope of the employee's employment, that contention is not properly assessed by asking if that separate act fits within a small set of specific factors or categories. We therefore clarify and hold that there is no need—and it is not proper—to apply a separate test to determine whether the acts in question are so-called "special circumstances." The proper test is the traditional respondeat-superior test: whether the employee was acting in furtherance of her employer's business and within the scope of her employment at the time she committed the tortious act. We therefore disapprove the Court of Appeals's reference to and application of the "special circumstances exception" in this case and in other cases, and its reliance on "factors" for determining whether an employer is

27

vicariously liable for a tort committed by an employee during her commute to or from work. See *Stembridge*, 365 Ga. App. at 300 (discussing the "special circumstances exception" and noting factors for applying it); *Cotton*, 363 Ga. App. at 378-382 (holding that the "special circumstances exception" applied and mentioning factors); *Nguyen*, 358 Ga. App. at 173 (discussing the "special circumstances exception" and listing factors); *Farzaneh*, 309 Ga. App. at 641 (discussing the "special circumstances exception"); *Hunter*, 287 Ga. App. at 691 (concluding that there was evidence that "special circumstances" existed, such that the issue of respondeat superior could proceed to a jury); *Clo White*, 263 Ga. App. at 839 (same).

(b) Along these lines, in *Clo White* and *Hunter*—the only two cases (prior to this case) in which the Court of Appeals determined that "special circumstances" existed, such that there was sufficient evidence to raise a jury question as to respondeat superior—the court's application of the "special circumstances exception" diluted the respondeat-superior test. In this respect, *Clo White* and *Hunter* evaluated whether an employee's tortious act merely was related to the employee's work, instead of applying the correct respondeat-

28

superior test of whether the employee was acting in furtherance of his employer's business and within the scope of his employment at the time of the tort.

In *Clo White*, there was evidence that an employee called his employer three times within moments of causing an accident while driving to work, and the purpose of at least one of the calls was to inform another employee of his arrival time and "to obtain information that would assist [him] in fulfilling his duties at the office."  See 263 Ga. App. at 839.  There, the Court of Appeals affirmed the denial of the employer's motion for summary judgment, concluding that although an employee who travels to and from work generally "'acts only for his own purposes'" "a special circumstance" existed, "whereby the employee may have actually been conducting some manner of company business at the same time that he was on the way to work when the accident occurred" and that a jury issue therefore existed as to respondeat superior.  Id. (citation omitted).

In *Hunter*, there was evidence that within moments of a shift supervisor's colliding with another car while he was driving to work, the supervisor called a co-worker, and the co-worker called the

29

supervisor back, but the supervisor did not answer the call. See 287 Ga. App. at 690. The supervisor testified during his deposition that he saw the co-worker's name appear on his cell phone screen and thought the co-worker was calling because he was going to be late or needed something for his job as a welder. See id. The Court of Appeals reversed the trial court's grant of summary judgment to the employer, holding that there was evidence that the supervisor "may have been on his cell phone regarding company business when the accident occurred or that he might have been distracted by an incoming call from [the co-worker], whom [the supervisor] knew was calling to tell him that he would be late or that he needed something for his work as a welder when he arrived" and that this evidence raised a jury question as to whether the supervisor "was acting within the scope of his employment upon the existence of business-related special circumstances at the time of the accident." Id. at 691.

The Court of Appeals in this case concluded that *Clo White* and *Hunter* established that when there is evidence that an employee caused a car accident "while commuting to work when he is on the phone regarding business-related matters or is distracted by an

30

incoming business-related call," there are "special circumstances" sufficient to raise a jury question regarding respondeat superior. *Cotton*, 363 Ga. App. at 378. But the test as to whether a respondeat-superior claim survives summary judgment is not whether there is evidence that an employee's use of her phone was "business-related," but whether there is evidence that the use of the phone was in furtherance of the employer's business and within the scope of the employee's employment. See, e.g., *Hicks*, 286 Ga. at 865; *Palladino*, 276 Ga. at 613. *Clo White* and *Hunter* incorrectly focused on whether the phone calls at issue in those cases were merely related to the employee's work, thus failing to undertake the required analysis of whether or not there was evidence that the calls were made in furtherance of the employers' business and within the scope of employment. To the extent that *Clo White* or *Hunter* suggest that a phone call that is merely related to the employer's business (rather than in furtherance of the business and within the scope of the employee's employment) is sufficient evidence to raise a jury question as to the issue of respondeat superior, we disapprove them. See *Clo White*, 263 Ga. App. at 839 (concluding that the employee "may have

actually been on the phone regarding matters of company business at the time of the accident," with no analysis as to whether or not, as a matter of law, the employee's phone calls to his employer were made in furtherance of his employer's business and within the scope of employment); *Hunter*, 287 Ga. App. at 691 (determining that the evidence showed that the shift supervisor "may have been on his cell phone regarding company business when the accident occurred or that he might have been distracted by an incoming call from [the co-worker]," and citing *Clo White*, without analyzing whether or not the supervisor was acting in furtherance of the business and within the scope of employment when he made the phone call or became "distracted" by the incoming call).

(c) Having clarified the proper framework for assessing the issue of respondeat superior when an employee commits a tortious act while commuting to or from work or during a lunch break, we note that some of the language in the Court of Appeals's opinion in this case is in line with this framework. See *Cotton*, 363 Ga. App. at 380 ("The test for whether University Childcare may be found liable for Bouie's actions is whether she was at the time of the injury 'engaged in the master's

business' or 'at that time serving the master'") (quoting *Clo White*, 263

Ga. App. at 840). However, the Court of Appeals's opinion also heavily

relied on the "special circumstances exception" and the imprecise

language in *Clo White* and *Hunter*, which we have now disapproved.

We therefore vacate the Court of Appeals's opinion and remand the

case to that court so that it can apply the appropriate analysis in the

first instance.[7]

*Judgment vacated and case remanded with direction. All the Justices concur.*

---

[7] The concurrence expresses skepticism that the evidence presented in this case could warrant summary judgment. Some of us are less skeptical that a set of circumstances like the ones presented in this case could establish, as a matter of law, that an employee was not acting in furtherance of her employer's business and within the scope of employment. However, we agree with the concurrence that we need not decide that question here to conclude that the special-circumstances exception is not the framework to evaluate a claim of respondeat superior.

PETERSON, Presiding Justice, concurring.

I join the majority opinion in full. I write separately to note my suspicion that the question we properly remand for the Court of Appeals to decide in the first instance is not the kind of question that is well-suited for a decision as a matter of law.

Among the first rights that the Georgia Constitution guaranteed the people of Georgia was the right to trial by jury, and the Constitution has held that right inviolate ever since. In that light, summary judgment is proper only if "no rational juror could resolve the issue in the nonmoving party's favor." *Ga. CVS Pharmacy, LLC v. Carmichael,* 316 Ga. 718, 725 (II) (B) (890 SE2d 209) (2023) (citation and punctuation omitted).

It seems to me that this will be a hard threshold to meet in cases like this one. It makes sense that an employee's commute is neither within the scope of employment nor in the furtherance of the employer's business; after all, a commute is principally the result of the employee's choice of where to live, a matter that will almost never be within the scope of employment and in furtherance of the employer's business. But the question of scope and furtherance becomes more

34

complicated when an employee does something work-related during the commute. When our commute rule emerged nearly a century ago, the state of technology did not permit such multi-tasking, and so such complications did not really exist. But today, technology enables many employees to make commute time as productive as office time (if not more so).

The Court of Appeals' "special circumstances exception" and its factors represented an effort to bring analytical structure to the difficult question of when work-related activity during a commute satisfies the scope and furtherance requirements. I agree with the majority that scope and furtherance determinations are not susceptible to the kind of structure the Court of Appeals developed, and so we properly overrule it. But in the absence of that kind of structure, it seems to me that the question of when mid-commute work-related activity rises to the level of scope and furtherance will almost always be for a jury to decide.

That said, the majority properly concludes that the question in this case is for the Court of Appeals to decide in the first instance. So – like the majority – I express no view on the answer.

I am authorized to state that Chief Justice Boggs, Justice Ellington, and Justice Pinson join in this concurrence.