**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

June 25, 2024

# In the Court of Appeals of Georgia

A21A1457.  COTTON  v.  PRODIGIES  CHILD  CARE
MANAGEMENT, LLC, d/b/a UNIVERSITY CHILDCARE
CENTER.

GOBEIL, Judge.

Following an automobile collision, Andrea Leah Cotton filed a personal injury complaint against Bianca Bouie and Bouie's then-employer, Prodigies Child Care Management, d/b/a University Childcare Center ("University Childcare"). Ultimately, the trial court granted summary judgment to University Childcare, rejecting Cotton's theory of respondeat superior. In February 2022, a divided panel of this Court reversed the judgment of the trial court, finding that there was sufficient evidence to raise a jury question as to the issue of liability under respondeat superior. *Cotton v. Prodigies Child Care Mgmt., LLC*, 363 Ga. App. 376, 380 (870 SE2d 112)

(2022) ("*Cotton I*"). After granting University Childcare's petition for certiorari, the Supreme Court of Georgia vacated our opinion and remanded the case for this Court to conduct a new analysis. *Prodigies Child Care Mgmt., LLC v. Cotton*, 317 Ga. 371, 386 (893 SE2d 640) (2023) ("*Cotton II*"). For the reasons set forth below, we now affirm the trial court's order.

As described in *Cotton II*, the record viewed in the light most favorable to Cotton as the non-movant shows the following.

In January 2018, Bouie was employed as a daycare teacher at University Childcare, and she also attended college courses to earn her associate degree in early childhood education.[1] Bouie typically took an approximately hourlong, unpaid lunch break during her work day, and on January 26, she used her lunch break to perform in a puppet show so that she could earn extra credit in one of her courses. Earlier that day, Bouie told her manager that she would return from her lunch break "a little bit late," likely "a little after 2:00 p.m." She clocked out for her lunch break at 12:53 p.m., drove her own car to the location of the puppet show, performed in the show, and then left around 2:20 p.m. After she began driving back to work, she realized that she would arrive later than "a little after 2:00." Intending to call University Childcare to let her manager know that she was late, Bouie looked away from the road as she

---

[1] It is undisputed that University Childcare did not require Bouie to attend the courses and did not pay her tuition.

held her personal cell phone in her hand and scrolled through the contacts listed in her phone to find University Childcare's phone number. Before she was able to find the number, however, she looked up and saw that her car was in the median. As she tried to swerve out of the way of oncoming traffic, Cotton's truck struck the passenger-side of Bouie's car. Bouie was cited for distracted driving and failure to maintain lane, and she admitted during her deposition that the accident was her fault.

In February 2018, Cotton filed a personal injury lawsuit against Bouie, alleging, among other things, claims of negligence and negligence per se. About a year later, she amended her complaint to add University Childcare as a defendant, claiming, among other things, that University Childcare was vicariously liable for Bouie's actions under the theory of respondeat superior, because Bouie was acting in furtherance of University Childcare's business and within the scope of her employment when she attempted to call her manager to report that she was late. Specifically, Cotton asserted that because University Childcare had "strict teacher-child classroom ratios to maintain throughout the day," Bouie's attempted call was "necessary and in the interest of University Childcare's business and personal affairs."

In addition, the amended complaint alleged, and Cotton later presented evidence to the trial court showing, that University Childcare had a policy directing its employees to speak with a manager "as soon as possible" if they were going to arrive late to work and that employees

could be disciplined or terminated for being "absent, tardy, or leaving early without prior knowledge and approval of a University Childcare Center administrator." During her deposition, Bouie testified that punctuality was "very important" at University Childcare, and she typically called her manager if she was going to be late. Cotton also presented evidence that the state of Georgia and University Childcare each established applicable regulations for teacher-to-child ratios, University Childcare had a policy enforcing those regulations, and Bouie and the two assistant teachers with whom she worked usually planned the times of their respective lunch breaks so as to maintain the required teacher-to-child ratios in Bouie's classroom.

In February 2020, University Childcare moved for summary judgment, arguing that the doctrine of respondeat superior did not apply as a matter of law because Bouie was not acting in furtherance of University Childcare's business and within the scope of her employment, as the accident occurred while she was traveling back to work during her lunch break. After a hearing, the trial court granted the motion in April 2021, concluding that Cotton's theory of respondeat superior failed as a matter of law, because Bouie was not "acting within the scope of her employment or engaged in her employer's business" at the time of the accident.

317 Ga. at 373-374 (punctuation and footnotes omitted).

Cotton appealed, and in February 2022, we reversed the trial court's judgment. *Cotton I*, 363 Ga. App. at 382. Our opinion categorized Bouie's use of her cell phone for work-related activities during her lunch commute as potentially falling within a "special circumstances exception" to the general rule that employees are not acting within the scope of their employment when they are commuting to or from work or a lunch break. Id. at 378. Relying on a line of cases, including *DMAC81, LLC v. Nguyen*, 358 Ga. App. 170, 173 (1) (853 SE2d 400) (2021), *Clo White Co. v. Lattimore*, 263 Ga. App. 839, 840 (590 SE2d 381) (2003), and *Hunter v. Modern Continental Constr. Co.*, 287 Ga. App. 689, 691 (652 SE2d 583) (2007), we determined that Cotton "presented sufficient evidence to raise a jury question on" the issue of whether in light of the facts presented "Bouie's use of her cell phone in trying to find her employer's number in order to report her late arrival from lunch constituted 'special circumstances' such that she was acting within the scope of her employment at the time of the accident." *Cotton I*, 363 Ga. App. at 378-382.

The Supreme Court then issued the opinion in *Cotton II*. The Court reiterated throughout the opinion that the key inquiry in this and any respondeat superior case is whether the tort was committed (1) while the employee was acting within the scope

of her employment and (2) in furtherance of her employer's business. *Cotton II*, 317 Ga. at 376-377 (2) (a), 380. And, because an employee is generally acting for her own purposes during the commute to or from work, she is not furthering her employer's business or acting within the scope of employment at that time – and respondeat superior does not apply to attach liability if the employee commits a tort during her commute. Id. at 378-380 (2) (b). For the same reasons, an employer is not typically responsible for torts that occur during an employee's lunch break because the employee is acting for her own purposes and not for her employer's. Id. at 380 (2) (b).

The Supreme Court then expressly disapproved language used by this Court referencing or applying the "'special circumstances exception' in *Cotton I* and in other cases and [our] reliance on 'factors' for determining whether an employer is vicariously liable for a tort committed by an employee during her commute to or from work." *Cotton II*, 317 Ga. at 383 (3) (a). Further, the Court disapproved *Cotton I*, *Clo White*, and *Hunter* insofar as those cases diluted the respondeat superior test by asking whether an employee's tortious act merely was "related to the employee's work, instead of applying the correct respondeat-superior test of whether the employee was

acting in furtherance of his employer's business and within the scope of his employment at the time of the tort." *Cotton II*, 317 Ga. at 384-385 (3) (b).

Thus, after *Cotton II*, it is clear there is no separate legal doctrine for applying a "special circumstances exception" to the general rule that an employer is not responsible for torts committed by an employee during her lunch break. 317 Ga. at 380-384 (3). Rather, any "special circumstances" that may appear in the record merely inform the application of the doctrine of respondeat superior. Id. at 381-384 (3) (a). Therefore, the proper test under which we will consider Cotton's respondeat superior claim is whether the tort was committed (1) while Bouie was acting within the scope of her employment with University Childcare and (2) in furtherance of University Childcare's business. Id. at 376-377 (2) (a), 380 (3). We conclude that it was not.

We review the trial court's grant of summary judgment de novo. *McBee v. Aspire at West Midtown Apartments, L.P.*, 302 Ga. 662, 662 (1) (807 SE2d 455) (2017). Summary judgment is proper if the moving party demonstrates "that there is no genuine issue of material fact, so that the party is entitled to judgment as a matter of law." Id. at 663 (1) (citation and punctuation omitted). See also OCGA § 9-11-56 (c)

7

(providing that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). A defendant meets this requirement if it presents "evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims." *McBee*, 302 Ga. at 663 (1) (citation and punctuation omitted). Whether an employee is acting within the scope of employment is normally a question for the jury "except in plain and undisputable cases." *Hankerson v. Hammett*, 285 Ga. App. 610, 612 (1) (647 SE2d 319) (2007) (citation omitted). "[S]ummary judgment for the employer is appropriate where the evidence and all reasonable inferences drawn therefrom show that the employee was not engaged in furtherance of the employer's business, but was on a private enterprise of the employee's own." *Chorey, Taylor & Feil, P.C. v. Clark*, 273 Ga. 143, 144 (539 SE2d 139) (2000) (citation omitted).

Here, the record shows that Bouie's position with University Childcare at the time of the accident was "lead teacher." According to Bouie's deposition and University Childcare's personnel handbook, Bouie's work responsibilities included

8

caring for the children, making lesson plans, setting up activities, maintaining parent contact, and supervising the assistant teachers. As described in *Cotton I*, state regulations require daycares to comply with specific teacher-to-child ratios at all times. 363 Ga. App at 377; Ga. Comp. R. & Regs. 591-1-1-.32 (administrative code setting teacher-to-child ratios based on age). Bouie was aware of state regulations governing the daycare, including teacher-to-child ratios, and she knew that the State could inspect the premises without advance notice. Complying with these regulations when she was working was no doubt within the scope of her employment (and, in fact, "maintain[ing] ratio to ensure proper supervision" was included in her assigned duties and responsibilities in the personnel handbook). However, Cotton failed to present any evidence that Bouie had any responsibility to monitor or enforce compliance with these regulations when she was clocked out and off the premises.

The mere existence of University Childcare's late notification policy cannot be said to bring an otherwise personal, off-the-clock commute within Bouie's scope of employment when nothing else about that commute falls within the scope of her duties or responsibilities to her employer. See *Farzaneh v. Merit Constr. Co.*, 309 Ga. App. 637, 641-642 (710 SE2d 839) (2011), disapproved on other grounds by *Cotton II*,

9

317 Ga. at 383-384 (3) (a) (company's auto safety policy purporting to "show[ ] that employees' use of their personal vehicles was essential to [employer's] business" was not sufficient to show that an employee's use of his personal vehicle to commute was within the scope of his employment). Nothing in the attendance policy required Bouie to provide the notice during her commute or at any specific time other than "as soon as possible." Thus, Bouie was not acting within the scope of her employment when she was off-the-clock and driving back to work and caused the accident in this case. See *Hicks v. Heard*, 286 Ga. 864, 868 (692 SE2d 360) (2010) (even where an employee is "on-call" at the time of an accident, there must be some evidence "that the employee had, in fact, been called to duty and was acting pursuant to that duty at the time of an accident").

Given our conclusion above, we need not reach the question of whether Bouie was acting in furtherance of University Childcare's business. See *Cotton II*, 317 Ga. at 377 (2) (a) (to render a master liable for the actions of his employee, both prongs of the respondeat superior test must be present). Accordingly, we conclude that the trial court correctly determined that University Childcare was entitled to summary

judgment, and we affirm the trial court's grant of summary judgment.

*Judgment affirmed. Barnes, P. J., and Markle, J., concur.*